UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

BILL WISSER,    :

        Plaintiff,    :      Case No. 1:19-cv-1445-LGS

     - against -    :      Hon. Lorna G. Schofield

                   :

VOX MEDIA, INC.,    :

        Defendant.    :

------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS

Rachel F. Strom
Caesar Kalinowski (*pro hac vice* application forthcoming)
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Phone: (212) 489-8230
Fax:    (212) 489-8340
rachelstrom@dwt.com
caesarkalinowski@dwt.com
*Attorneys for Defendant Vox Media, Inc.*

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................................... 2

    A.   Plaintiff's Refusal to Enter Good Faith Settlement Negotiations ........................... 2

    B.   Plaintiff's Discovery Violations .......................................................................... 2

    C.   Plaintiff's Testimony Establishes that His Lawyers Committed Forgery .............. 4

    D.   This Sanction Motion ....................................................................................... 5

III.  ARGUMENT ........................................................................................................... 6

    A.   Pursuant to This Court's Inherent Authority, Plaintiff's Counsel Should Be
        Sanctioned for Their Forgery and Fraud ............................................................ 7

    B.   This Court Should Sanction Plaintiff's Willful Failure to Provide
        Discovery ...................................................................................................... 10

    C.   This Court Should Sanction Plaintiff's Willful Defiance of the Court's
        Order ........................................................................................................... 14

IV.   CONCLUSION ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*,
  2019 WL 4193941 (S.D.N.Y. 2019) ........................................................................7

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975) ...............................................................................................7

*Branch v. Bank of Am.*,
  2013 WL 1742012 (D. Md. 2013) ..........................................................................9

*Cerruti 1881 S.A. v. Cerruti, Inc.*,
  169 F.R.D. 573 (S.D.N.Y. 1996) ..........................................................................12

*Craig v. UMG Recordings, Inc.*,
  2019 WL 2992043 (S.D.N.Y. 2019) ...............................................................6, 11

*Craig v. UMG Recordings, Inc.*,
  380 F. Supp. 3d 324 (S.D.N.Y. 2019) ....................................................................7

*DaCosta v. City of New York*,
  296 F. Supp. 3d 569 (E.D.N.Y. 2017) ..................................................................12

*Ferdman v. CBS Interactive, Inc.*,
  342 F. Supp. 3d 515 (S.D.N.Y. 2018) .............................................................6, 11

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2019 WL 3302606 (S.D.N.Y. 2019) .......................................................................8

*Granados v. Traffic Bar & Rest., Inc.*,
  2015 WL 9582430 (S.D.N.Y. 2015) .......................................................................8

*Hernandez v. NJK Contractors, Inc.*,
  2015 WL 1966355 (E.D.N.Y. 2015) .......................................................................8

*In re Hurricane Sandy Cases*,
  303 F.R.D. 17 (E.D.N.Y. 2014), *aff'd*, *Raimey v. Wright Nat'l Flood Ins. Co.*,
  76 F. Supp. 3d 452 (E.D.N.Y. 2014) ......................................................................9

*Lee v. Max Int'l, LLC*,
  638 F.3d 1318 (10th Cir. 2011) ............................................................................12

*McDermott v. Monday Monday LLC*,
  2018 WL 5312903 (S.D.N.Y. 2018) .......................................................................1

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*,
  191 F. Supp. 2d 440 (S.D.N.Y. 2002).......................................................................7

*MomsWin, LLC v. Lutes*,
  2003 WL 21077437 (D. Kan. 2003) ..........................................................................8

*Pereira v. 3072541 Canada Inc.*,
  2018 WL 5999636 (S.D.N.Y. 2018)...........................................................................6

*Revson v. Cinque & Cinque, P.C.*,
  221 F.3d 71 (2d Cir. 2000)........................................................................................12

*Reynolds v. Hearst Commc'ns, Inc.*,
  2018 WL 1229840 (S.D.N.Y. 2018).....................................................................13, 15

*Rice v. NBCUniversal Media, LLC*,
  2019 WL 3000808 (S.D.N.Y. 2019), *report & recommendation adopted by*
  2019 WL 3752491 (S.D.N.Y. 2019)...........................................................1, 6, 10, 15

*Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*,
  2016 WL 2640351 (W.D.N.Y. 2016) .........................................................................9

*Sakon v. Andreo*,
  119 F.3d 109 (2d Cir. 1997)......................................................................................11

*Sands v. Bauer Media Grp. USA, LLC*,
  2019 WL 4464672 (S.D.N.Y. 2019).......................................................................6, 15

*Schlaifer Nance & Co. v. Estate of Warhol*,
  194 F.3d 323 (2d Cir. 1999)......................................................................................11

*Steeger v. JMS Cleaning Servs. LLC*,
  2018 WL 1363497 (S.D.N.Y. 2018)............................................................................6

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
  328 F.R.D. 100 (S.D.N.Y. 2018) ..............................................................................14

*Walpert v. Jaffrey*,
  127 F. Supp. 3d 105 (S.D.N.Y. 2015)........................................................................10

*Wisser v. Group Nine Media, Inc.*,
  No. 1:19-cv-09045-VEC (S.D.N.Y. Sept. 29, 2019) ..................................................6

*Younes v. 7-Eleven, Inc.*,
  312 F.R.D. 692 (D.N.J. 2015)....................................................................................14

**Federal Statutes**

28 U.S.C. § 1927 ..........................................................................................6, 7, 10, 11

**Rules**

Fed. R. Civ. P. 16...................................................................................................7, 14

Fed. R. Civ. P. 26...................................................................................................7, 10

Fed. R. Civ. P. 33.................................................................................................2, 8, 10

Fed. R. Civ. P. 34....................................................................................................2, 3

Fed. R. Civ. P. 37.................................................................................................. *passim*

**Other Authorities**

7 Moore's Federal Practice, § 33.104[1] (Matthew Bender 3d ed.) ...............................................8

Vox Media, Inc. ("Vox Media") respectfully submits this memorandum of law in support of its motion for sanctions against counsel for Plaintiff William Wisser ("Wisser" or "Plaintiff") for, among other things, forging Plaintiff's signature on a sworn verification.

## I.        PRELIMINARY STATEMENT

Throughout this litigation, Plaintiff Wisser's counsel, Richard Liebowitz and James Freeman, have repeatedly obstructed discovery and violated this Court's scheduling order.  This conduct, however, is not new or unexpected.  As this Court is well aware, "there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz alone." *Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808, at *1 (S.D.N.Y. 2019) (citing cases), *report & recommendation adopted by* 2019 WL 3752491 (S.D.N.Y. 2019).  Like much of the conduct at issue here, "Mr. Liebowitz has . . . been sanctioned for failing to comply with court orders and for failing to produce materials during discovery." *McDermott v. Monday Monday LLC*, 2018 WL 5312903, at *2 (S.D.N.Y. 2018) (citing cases).

But that conduct is not what prompted this motion.  Vox Media only sought sanctions after Plaintiff's testimony made clear that his counsel *forged* Plaintiff's signature on an interrogatory verification—when, in fact, Plaintiff never saw the interrogatories or the responses—and the responses were incorrect.  Vox Media is not "'trolling' for sanctions," *see* Dkt. 27 at 1, but rather asks this Court to help put an end to this egregious behavior.  Accordingly, Vox Media respectfully requests that this Court award sanctions in the form of costs and fees it previously incurred, as well as punitive sanctions to deter continuing misconduct by Plaintiff's counsel—as the previous monetary sanctions imposed on them have clearly been insufficient.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Refusal to Enter Good Faith Settlement Negotiations

On February 1, 2019, Plaintiff filed his Complaint against Vox Media, alleging that its website Eater Miami had violated his copyright in a photograph of oysters (the "Photograph") at a Miami restaurant, Ariete.  Dkt. 1.  In the interest of finding a cost-efficient resolution, Vox Media made an immediate Offer of Judgment on March 29 to resolve this case for approximately twenty-five times Plaintiff's requested licensing fee for the Photograph.  *See* Dkt. 23 at 1-2; Declaration of Rachel Strom ("Strom Decl.") ¶ 4.  Plaintiff's counsel never responded to the Offer, implicitly rejecting it, and later even refused to respond to other reasonable settlement offers, claiming instead that he "wants to take this [lawsuit] to judgment."  Strom Decl. ¶ 5.

### B.    Plaintiff's Discovery Violations

Since Plaintiff's counsel made clear they would not engage in *any* settlement negotiations, the parties began discovery.  On April 26, Vox Media served its Interrogatories and Requests for Production ("RFP"), which Plaintiff was required to answer by May 27.  *See* Fed. R. of Civ. P. ("Rule") 33(b)(2); Rule 34(b)(2)(A).  The weekend before the response deadline, Mr. Liebowitz requested a two-week extension, which Vox Media granted.  Strom Decl. ¶ 7.

On June 7, Plaintiff's counsel, Mr. Freeman, served responses to Vox Media's RFPs and interrogatories, along with Plaintiff's Interrogatory Verification page purportedly signed under oath by Wisser.  *Id.* ¶ 8, Ex. A.  Surprisingly, in the RFP responses, Plaintiff claimed he did "not have any documents in his possession responsive to" multiple requests, including no communications regarding the Photograph, no offers to sell or license the Photograph, and no payments received for the Photograph.  *See id.* ¶ 9, Ex. B (RFPs 6–8, 13, 15–16).  These claims turned out to be false.

By the time of the parties' June 14 Joint Letter to the Court, Plaintiff's counsel still had not provided any responsive documents but assured the Court they would do so "within the next three business days." *See* Dkt. 18 at 1. In any event, the terms of this Court's scheduling order required Plaintiff to provide responsive documents by June 23. Dkt. 15 ¶ 8(c). Both deadlines passed, however, without any correspondence or production from Plaintiff. Strom Decl. ¶ 11. Although Mr. Liebowitz again promised to produce documents by June 25 after being threatened with a motion to compel, nothing came until June 26. *Id*. ¶ 12. What Plaintiff did serve was wholly deficient, consisting entirely of publicly obtained documents[1]—including a copy of Vox Media's Wikipedia page—and one single invoice from Plaintiff to an unrelated restaurant, Vinaigrette, for photographs unrelated to this lawsuit. *Id*. ¶ 13.

On July 17, following multiple demands for supplementation and Plaintiff's counsels' claims that they were "prepping for trial" or their "client is still gathering [the documents]," Plaintiff finally produced his contract and invoice with *Miami New Times*—showing that he licensed forty-one photographs (including the Photograph at issue here) to *Miami New Times* for a total of $200. *Id*. ¶ 14. The next two days Mr. Liebowitz also produced non-native, incomplete versions of communications showing Plaintiff's attempt to license the Photograph to Ariete for $135. *Id*. ¶ 15. After demanding complete, native versions of the emails, *see* Rule 34(b)(2)(E), Plaintiff's counsel again provided non-native (but slightly more complete) versions of the requested emails—along with other emails that had not been produced. *Id*. These documents fully

---

[1] The production included a copy of the Photograph, a printout of the copyright registrations for a number of Plaintiff's photographs (ostensibly including the Photograph at issue), a copy of the *Miami New Times* article that included the Photograph, Eater Miami's article featuring the Photograph, Vox Media's Wikipedia page, two articles about Vox Media's advertising revenue, and two unrelated articles in *Where Traveler* and *Goop* (which are not owned by Vox Media) featuring the Photograph.

belied Plaintiff's RFP responses that Plaintiff did not possess any documents related to the Photograph or his attempts to license the Photograph.  In the meantime, Vox Media's counsel had discovered additional instances where Plaintiff licensed the Photograph—specifically, when he posted it on his own Instagram and Facebook pages.  *Id.* ¶ 16, Ex. C.  To this day, Plaintiff has not produced copies of these postings, although they were called for by the RFPs.  *Id.* ¶ 16.

## C.   Plaintiff's Testimony Establishes that His Lawyers Committed Forgery

During Plaintiff's deposition on August 15, it became clear that Plaintiff's counsel had engaged in far more serious misconduct than your run-of-the-mill discovery violation.  When Vox Media's counsel asked Wisser about his Interrogatory Responses, Plaintiff claimed he had never seen the document before.  Hoping to refresh his recollection, Vox Media's counsel asked about Plaintiff's Verification to his interrogatory response page—which purportedly bore his own signature.  Plaintiff appeared confused and stated that he had never seen the interrogatory responses, that it was not his signature on Plaintiff's Verification page, that he did not even know "what th[e] document is," and that he had never seen the document purportedly signed by him under oath.  *Id.* ¶ 17, Ex. D at 80:2–81:11; *see also id.* at 87:15–19 (in response to question "What did [Wisser] do to ensure that these interrogatory responses were accurate[,]" Wisser testified:  "I didn't see these interrogatory responses until today, you just showed them to me").[2]

As Plaintiff did not participate in preparing the Interrogatory Responses, it was no surprise that he also testified that many of the Responses were incorrect or incomplete.  For example, Interrogatory 1 had requested Plaintiff to "[i]dentify all persons or entities you believe have infringed upon your intellectual property rights in the Photograph," to which Plaintiff listed only

---

[2] Pursuant to Rule III(B)(3) of the Individual Rules and Procedures for Civil Cases of the Honorable Lorna G. Schofield, we have only included relevant portions of Plaintiff's deposition transcript in the Exhibits but have also delivered a CD version of the full transcript in a text-searchable electronic version.

"Defendant."  *Id.* Ex. A.  But during his deposition, Plaintiff acknowledged that he was aware of multiple entities infringing the Photograph and had even filed suit against some—using the same counsel in this suit—before his interrogatory responses were served.  *See id.* Ex. D at 86:2–87:14. Furthermore, when asked about his attempts to license the Photograph as requested by Interrogatory 3 (and RFP 8), Plaintiff admitted that the answer "*Miami New Times*" alone was incorrect and that he had attempted to license the Photograph to others well before his responses were served.  *Id.* at 88:21–89:17.

Counsels' failure to meet even basic discovery obligations was only underscored when Plaintiff testified that his own counsel did not even ask him to look for responsive documents until weeks ***after*** this Court had ordered initial production on June 23.  *Id.* ¶ 18, Ex. E at 59:6–60:8 (Plaintiff: "I don't recall if [Mr. Liebowitz] asked me on July 19 or July 18 or July 12 but some time on or about that time period he asked me to find whatever I could. . . . I'm a pretty prompt person and I'm sure I delivered this stuff, you know, within a day or two.").[3]  This failure explains Plaintiff's false RFP responses—which claimed he did not possess documents that he clearly possessed.

**D.      This Sanction Motion**

After Plaintiff's deposition, Defense counsel immediately requested a meet-and-confer with Plaintiff's counsel to discuss the forged signature on Plaintiff's Verification.  *Id.* ¶ 19.  Instead of responding to that request, Plaintiff's counsel served "Superseding Responses to Defendant's Interrogatories" that included information that should have been included in the original responses. *Id.* ¶ 19, Ex. F.  Defense counsel then again requested a meet-and-confer with Plaintiff's counsel,

---

[3] Plaintiff also testified that did not know until two days before the deposition that "documents" for discovery purposes included electronic files.  Strom Decl. ¶ 18, Ex. E at 23:24–26:22.

but Plaintiff's counsel would only agree to meet five days later at the very time he knew defense counsel would be on a plane to defend a deposition Plaintiff's counsel noticed in Florida.  *Id.* ¶ 20, Ex. G.

When Plaintiff's counsel did finally agree to a meet-and-confer, the forged signature was alluded to as "a technical knick-knack."  *Id.* ¶ 21.  At the parties' pre-motion conference with the Court, Plaintiff's counsel again failed to grapple with the gravity of their actions—while they admitted that the signature on the verification page was not actually their client's, they evaded the Court's questions on when they specifically worked with Wisser to provide accurate interrogatory answers.  The truth is that they did not work with their client at all, as Plaintiff specifically testified that he personally had done nothing to ensure the responses were accurate because he had not even seen the interrogatories or the responses before defense counsel showed them to him.[4]

### III.    ARGUMENT

### THIS COURT SHOULD SANCTION PLAINTIFF AND HIS COUNSEL FOR THE REPEATED MISCONDUCT IN THIS CASE

Plaintiff's counsel have been sanctioned time and time again—but their conduct in this case makes it clear that these prior sanctions were insufficient to deter their improper conduct.[5]  In

---

[4] Mr. Wisser, for his part, does not appear to have lost confidence in his counsel.  On Sunday, Mr. Liebowitz filed a new lawsuit in Wisser's name for a photograph that was published over four years ago—when the statute of limitations for copyright claims is three years.  *See* Complaint, *Wisser v. Group Nine Media, Inc.*, No. 1:19-cv-09045-VEC (S.D.N.Y. Sept. 29, 2019).

[5] *See, e.g.*, *Sands v. Bauer Media Grp. USA, LLC*, 2019 WL 4464672, at *7 (S.D.N.Y. 2019) (ordering monetary sanctions against Mr. Liebowitz of attorneys' fees for discovery misconduct); *Craig v. UMG Recordings, Inc.*, 2019 WL 2992043, at *7 (S.D.N.Y. 2019) (confirming sanctions award against Mr. Liebowitz for "$98,532.62 in attorney's fees and costs pursuant to 28 U.S.C. § 1927" for discovery misconduct); *Rice*, 2019 WL 3000808, at *6-7 (awarding attorneys' fees based on discovery misconduct); *Steeger v. JMS Cleaning Servs. LLC*, 2018 WL 1363497, at *3 (S.D.N.Y. 2018) (awarding monetary sanctions against Mr. Liebowitz and requiring him to complete four additional CLE credits hours in ethics and professionalism); *Ferdman v. CBS Interactive, Inc.*, 342 F. Supp. 3d 515, 529 (S.D.N.Y. 2018) (precluding evidence as sanction); *see also Pereira v. 3072541 Canada Inc.*, 2018 WL 5999636, at *3 (S.D.N.Y. 2018) (declining to

fact, their conduct may be getting worse.  Unlike earlier cases, we are not just dealing with fairly ordinary discovery violations.  Instead, Plaintiff's counsel has now committed fraud by forging his client's verification page—which is expressly taken under oath—for Plaintiff's interrogatory responses.  Because Mr. Liebowitz and his firm have shown a continuing disregard for his client's discovery obligations and their own responsibilities as officers of the court, Vox Media requests sanctions under Rules 16(f), 26(g), 37(a), (b), & (d), 28 U.S.C. § 1927, and this Court's inherent authority, including, but not limited to, costs and fees.

### A.   Pursuant to This Court's Inherent Authority, Plaintiff's Counsel Should Be Sanctioned for Their Forgery and Fraud

First and foremost, pursuant to this Court's inherent authority, Plaintiff's counsel should be sanctioned for forging Plaintiff's signature on the interrogatory verification, serving responses Plaintiff had not seen, and failing to verify any of the information provided was full and accurate. Unrelated to the statutory basis for sanctions outlined below, "[t]he inherent powers of the Court also allow it to sanction parties and attorneys who have 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)). "Sanctions under the Court's inherent power may also be imposed . . . where a litigant has perpetrated a fraud upon the Court."  *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 2019 WL 4193941, at *8 (S.D.N.Y. 2019).  "[A] fraud upon the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation, of

---

award fees but stating that "[t]o the extent that Mr. Liebowitz and/or his law firm engage in misconduct in the future, however, the Court will not hesitate to impose sanctions").

the opposing party's claim or defense." *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (citation & internal quotation marks omitted). Plaintiff's counsel has perpetrated a fraud on this Court.

Under Rule 33(b)(3), "[e]ach interrogatory must . . . be answered separately and fully in writing **under oath**."  (emphasis added). The Rules require that "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections." Rule 33(b)(5). Courts applying these Rules have interpreted them to require "interrogatories to be answered by the party to whom they are directed and signed by [the] same." *In re Gen. Motors LLC Ignition Switch Litig.*, 2019 WL 3302606, at *2 (S.D.N.Y. 2019) (quoting *Hernandez v. NJK Contractors, Inc.*, 2015 WL 1966355, at *36 (E.D.N.Y. 2015)); *see also Granados v. Traffic Bar & Rest., Inc.*, 2015 WL 9582430, at *4 (S.D.N.Y. 2015) ("Rule 33(b) of the Federal Rules of Civil Procedure provides that interrogatories must be answered by 'the party to whom they are directed' . . . . Furthermore, such answers must be 'verified,' i.e., answered and signed under oath by the person answering." (citation omitted)). And while "[c]ourts are aware that a party often will require and receive assistance from counsel in the preparation of responses to interrogatories, . . . it is not proper or acceptable for the attorney alone to sign or verify responses." 7 Moore's Federal Practice, § 33.104[1] (Matthew Bender 3d ed.).

The fact that an attorney may not forge his or her client's signature on Rule 33 responses appears so axiomatic that we have found only <u>one</u> district court that addressed such conduct. In *MomsWin, LLC v. Lutes*, 2003 WL 21077437 (D. Kan. 2003), the District Court of Kansas granted sanctions against an attorney in this exact situation—namely, an attorney who provided insufficient interrogatory responses, after failing to verify the information contained therein, and then attempted to pass off a fake signature as his client's. *Id.* at *2–4 (awarding sanctions under

Rule 37).  But other courts have sanctioned parties and counsel for far less egregious behavior—merely the failure to provide responses from the plaintiff, especially where it was clear that the attorney's excuses for that failure were disingenuous.  *See, e.g.*, *Branch v. Bank of Am.*, 2013 WL 1742012, at *4 (D. Md. 2013) (awarding Rule 37 sanctions); *Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, 2016 WL 2640351, at *6 (W.D.N.Y. 2016) (awarding fees and granting motion to compel because "[c]ounsel . . . had a duty to facilitate full disclosure and production by" his client); *In re Hurricane Sandy Cases*, 303 F.R.D. 17, 28, 31–32 (E.D.N.Y. 2014) (ordering sanctions, costs and fees, and motion to compel because merely asking for a file "did not satisfy counsel's obligations"), *aff'd*, *Raimey v. Wright Nat'l Flood Ins. Co.*, 76 F. Supp. 3d 452 (E.D.N.Y. 2014).

Here, Mr. Liebowitz signed Plaintiff's Interrogatory Responses with an electronic signature (/s/richardliebowitz), Mr. Freeman "certifie[d] that a true and correct copy of the foregoing PLAINTIFF BILL WISSER'S ANSWERS AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES ha[d] been served" with an electronic signature (/jameshfreeman/).  Strom Decl. Ex. A.  But "Plaintiff's Verification of his Answers," which was purportedly signed by Plaintiff, was not a simple type-written signature; rather, it included a signature that appeared to be real and handwritten from Plaintiff Wisser himself.  *Id.* ¶ 8, Ex. A.

And, Plaintiff's verification page specifically states that "Plaintiff Bill Wisser ("Wisser") **being duly sworn**, deposes and says that I am the plaintiff in this action, that I **have read Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories**, dated June 7, 2019, and know the contents thereof, and **the same are true and accurate** to the best of my knowledge, information and belief."  *Id.* Ex. A (emphasis added).  Of course, we now know that none of these attestations was true.  Instead, like the attorney in *Lutes*, Plaintiff's counsel drafted the incomplete responses themselves, apparently never asking for Plaintiff's input, then

fraudulently certified that they were true, and forged Plaintiff's signature as "being duly sworn" in an attempt to deceive Vox Media—and frankly, this Court.  Rather than admit their behavior was egregious, Plaintiff's counsel called this forgery "a technical knick-knack" and evaded this Court's questions about the extent of their misconduct.  This fraud alone warrants the exercise of this Court's inherent authority to grant sanctions and deter Mr. Liebowitz's increasingly improper conduct.[6]

**B.      This Court Should Sanction Plaintiff's Willful Failure to Provide Discovery**

Next, but relatedly, this Court must impose sanctions on Plaintiff's counsel pursuant to Rules 26(g), 37(d), and 28 U.S.C. § 1927, because they have certified and provided wholly deficient Initial Disclosures, Interrogatory Responses, document productions and Responses to RFPs.

First, by signing disclosures or discovery responses, "an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: . . . with respect to a disclosure, it is complete and correct as of the time it is made; and . . . with respect to a discovery request, response, or objection, it is . . . not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]"  Rule 26(g)(1)(A) & (B)(ii).  "If a certification violates this rule without substantial justification, the court . . . **must impose** an appropriate sanction on the signer," which "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  Rule 26(g)(3) (emphasis added).

---

[6] This Court has discretion under its inherent authority to impose an array of sanctions, including dismissal, striking a statement or claim, and ordering payment of attorneys' fees.  *See Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 122 (S.D.N.Y. 2015) ("Courts' inherent powers include the power to dismiss a party's claims and to strike a party's pleadings for failure to obey court orders."); *Rice*, 2019 WL 3000808, at *5 (monetary sanction of attorneys' fees).

Second, "[t]he court where the action is pending may, on motion, order sanctions if . . . a party, after being properly served with interrogatories under Rule 33 or [RFPs], fails to serve its answers, objections, or written response."  Rule 37(d)(1)(A)(ii).  Under this Rule, "an evasive or incomplete . . . response must be treated as a failure to . . . respond."  *See* Rule 37(a)(4).  "Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[7]  Instead of or in addition to these sanctions, the court **must require** the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Rule 37(d)(3).

Third, "[a]ny attorney  . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The imposition of sanctions under § 1927 is appropriate "when there is a finding of conduct constituting or akin to bad faith."  *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997).  "[B]ad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  *Craig*, 2019 WL 2992043, at *2 (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)).

"In determining whether a discovery sanction is appropriate [under Rule 37], courts consider four factors:  '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the [excluded evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility

---

[7] The Court has discretion to order a number of sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses," Rule 37(b)(2)(ii), or dismissing the action, Rule 37(b)(2)(v).

of a continuance.'" *Ferdman*, 342 F. Supp. 3d at 527 (second & third alterations in original; citation omitted). And before imposing sanctions under § 1927, a court "must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000). Considering the facts of Mr. Liebowitz's conduct, these factors and standards are clearly met and sanctions are warranted.

Here, although Mr. Liebowitz refused to engage in any reasonable settlement negotiations—threatening instead to "take this one to judgment"—he has also refused to meet even his most basic discovery obligations. His actions have repeatedly obstructed discovery, supplied blatantly deficient information and productions, and needlessly driven up Defendant's costs—all in a case that Plaintiff himself chose to file. "Discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered." *See DaCosta v. City of New York*, 296 F. Supp. 3d 569, 595 (E.D.N.Y. 2017) (quoting *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011)). But that is just how Plaintiff's counsel have chosen to litigate this case—making it a shell game at Vox Media's expense. Mr. Liebowitz's actions have already prejudiced Defendant by forcing it to engage in repeated reminders and threats to obtain even basic discovery. It turns out, as Plaintiff testified, Mr. Liebowitz did not even ask Plaintiff to search for relevant documents until almost a month *after* they were due. Strom Decl. ¶ 18, Ex. E at 59:6–60:8. Moreover, to the extent Plaintiff supplemented any of his clearly deficient responses, supplementation came only *after* Defendant discovered the deficiencies. *See Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 583 (S.D.N.Y. 1996) (awarding sanctions and denying sanctioned party's claim "that because they withdrew the disputed records, they have inflicted no serious harm on the fact-finding process" because

"defendants did not withdraw the documents on their own.  Rather, they waited until the falsity of the documents had been detected").

For example, Plaintiff's sworn and certified Initial Disclosures only list Plaintiff, Vox Media, and a staff member of Liebowitz Law Firm, PLLC as having relevant knowledge concerning the entire matter.  Even at the outset of the case, however, Plaintiff was well aware that *Miami New Times* (which originally licensed the Photograph) and Jason Odio (who Wisser attempted to license the Photograph to) had relevant knowledge here.  Next, Plaintiff's first Interrogatory Response listed Plaintiff, Plaintiff's counsel, *Miami New Times*, and Vox Media as the only individuals or entities that infringed, had knowledge of, licensed, or attempted to license the Photograph.  Strom Decl. ¶ 8, Ex. A.  As Plaintiff's supplemental response shows, that list is incomplete and was not accurate at the time the responses were served.  Plaintiff has offered *no* explanation for these failures—let alone one with merit.

As for Plaintiff's yet-to-be-supplemented response to Defendant's RFPs, Plaintiff still apparently maintains that he does not have any documents related to his "offering of the Photograph for sale or license to any person," *id.* ¶ 9, Ex. B (RFP 8), any "documents relating to the existence of any market for the Photograph," *id.* (RFP 9), or most glaringly, any "communications relating to the Photograph," *id.* (RFP 13).  But discovery has shown these Responses were far from accurate—and, one would guess, the Responses were put together without any input from Plaintiff himself.  Defendant could continue to point out additional inconsistencies and deficiencies for almost every response to every request; however, just these examples lay bare the truth of Mr. Liebowitz's practice—he serves discovery responses without any actual input from his clients and will only barely comply with the Rules' requirements when threatened with motion practice, sanctions, or after his discovery violations have been uncovered.

As the Court in *Reynolds v. Hearst Communications, Inc.*, 2018 WL 1229840 (S.D.N.Y. 2018) already found, "Mr. Liebowitz . . . argues that plaintiff has not willfully disobeyed court orders, obstructed discovery, or increased the cost of litigation.  This is demonstrably false."  *Id.* at *4.  Vox Media—which has been forced to incur the time and cost of repeatedly badgering counsel, triple checking the veracity of even basic responses, bringing this and other motions to ensure compliance, flying out of state to defend depositions that Plaintiff's counsel never prepared for or attended in person, seeking and agreeing to extensions, staying discovery, and defending a claim that it did not bring but has repeatedly tried to settle in good faith—is continually prejudiced by Mr. Liebowitz's actions.  "Discovery is not a 'gotcha' game and 'the obligation on parties and counsel to come forward with relevant documents requested during discovery is absolute.'"  *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 123 (S.D.N.Y. 2018) (quoting *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 708 (D.N.J. 2015)).  Mr. Liebowitz is playing a game with discovery.  Mr. Liebowitz and his firm have clearly made a basic calculation—their business is still profitable even when they are forced to pay the monetary sanctions they sometimes incur without having to change their behavior.  Without more severe sanctions to deter future similar conduct, there is little likelihood that anything will change.

## C.    This Court Should Sanction Plaintiff's Willful Defiance of the Court's Order

Lastly, Plaintiff and his counsel should be sanctioned for violating the Court's April 9, 2019 Civil Case Management Plan and Scheduling Order.  Dkt. 15.  Under Rule 16(f)(1)(c), "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  "Instead of or in addition to any other sanction, the court **must** order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of

14

expenses unjust." Rule 16(f)(2) (emphasis added).  Whereas here, counsels' failure has never been justified or even explained, sanctions are warranted.

As recounted above, Plaintiff's counsel completely ignored the Court's June 23-ordered production deadline, without any correspondence or explanation why, Strom Decl. ¶ 11, even after counsel previously assured the Court that Plaintiff would start producing documents on June 17, *see* Dkt. 18 at 1.  In fact, Plaintiff's first wholly deficient document production did not come until June 26 and only after being threatened with a motion to compel.  Strom Decl. ¶ 12.  Taken alone, this three-day failure could be viewed as a mere oversight.  Although "[a] 'mere oversight' that happens once or twice is one thing, [a] pattern of discovery and related abuse is quite another, and rings of deliberate indifference to an attorney's obligation to behave in a professional, responsible, and competent manner in each and every case he handles."  *Sands*, 2019 WL 4464672, at *6 (sanctioning Mr. Liebowitz for discovery misconduct).  And, in fact, Plaintiff's own testimony confirmed that Mr. Liebowitz's failure here was far from a three-day oversight.  Despite this Court's June 23 document production deadline, Mr. Liebowitz did not even ask his client to search for relevant documents related to the Photograph until mid-July.  Strom Decl. ¶ 18, Ex. E at 59:6–60:8.  Plaintiff's counsel has offered no excuse for this delay—because there is none.

Because Mr. Liebowitz has repeatedly failed to follow this Court's orders here and in other actions, *see Rice*, 2019 WL 3000808, at *3 (sanctioning Mr. Liebowitz for his "fail[ure] to obey a scheduling or other pretrial order"); *Reynolds*, 2018 WL 1229840, at *4 ("Mr. Liebowitz failed to comply with orders in this litigation, as he has in other lawsuits."), this Court can and should find that the willful failure here constitutes independent grounds for Rule 16 sanctions.

## IV.  CONCLUSION

As illustrated by both the facts in this matter and the litany of cases specifically sanctioning Mr. Liebowitz, Plaintiff's counsel has shown a disdain for discovery requirements and his own

obligations as an officer of this Court.  Far from being deterred by previous sanctions issued by

this Court, his actions are increasingly flagrant—now committing outright fraud and forgery.

Because Defendant has already borne the costs of his misdeeds in the form of attorneys' fees,

multiplied proceedings, and delayed litigation, it now asks this Court to grant sanctions against

Mr. Liebowitz in the form of (1) Vox Media's attorneys' fees incurred in discovery thus far, (2) an

order compelling Plaintiff to appear for a second deposition to address the new responses in his

interrogatories, and (3) any other sanctions that the Court may deem appropriate to deter future

misconduct.

Dated: October 3, 2019

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/ *Rachel F. Strom*
Rachel F. Strom
Caesar Kalinowski (*pro hac vice* application
forthcoming)
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
rachelstrom@dwt.com
caesarkalinowski@dwt.com

*Attorneys for Defendant Vox Media, Inc.*