# Exhibit E

```
 1   UNITED STATES DISTRICT COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   ---------------------------------------X

 4   BILL WISSER,

 5                   Plaintiff,

 6            - against -

 7   VOX MEDIA, INC.,

 8                   Defendant.

 9   ---------------------------------------X

10                       1251 Avenue of the Americas
                         New York, New York
11
                         August 15, 2019
12                       10:00 a.m.

13

14        (Confidential portions included)

15

16        Deposition of Plaintiff, WILLIAM WISSER,

17   before Rita Persichetty, a Notary Public of the

18   State of New York.
```

1  you receive the PNG files that I sent, you
2  would -- that is their native format.  That's,
3  perhaps the word.  And you should see them in
4  the native format, not as a printout.  I
5  didn't --
6           In other words, unless you received a
7  physical copy -- unless you received a physical
8  copy, you did not -- if you received a physical
9  copy like this printout, that's not the same
10 thing as the original file.
11          The original file can only be viewed
12 on a computer.  It can't be, it can't be --
13 this is a reproduction, it doesn't include
14 all -- enough data to see it big.
15      Q    I agree.
16      A    So the printout is I think at fault.
17 I suspect that you did probably get the PNG
18 file and just have made a printout, which is
19 sort of a note, like summary in a sense, of
20 what this is but you really need to view it on
21 a computer screen to see it all.
22          MS. STROM:  If you'd like to resend
23     the files in a format that we can open
24     them individually and see them in a way
25     that your client would like us to do so,

1       please produce those to us immediately.
2              MR. FREEMAN:  I would just state that
3       we did produce the PNG files exactly as
4       the plaintiff provided them to us, so, you
5       know, in this E-mail had you just, you
6       know, right clicked at the bottom
7       right-hand corner, you could have
8       downloaded the PNG to your desktop and
9       seen it.
10             I don't know how that changes --
11             MS. STROM:  I assure you --
12             MR. FREEMAN:  -- the fact that it's
13      going to be ultimately printed to paper,
14      so I don't know how that's going to impact
15      your line of questioning, but I guess we
16      just proceed.
17             MS. STROM:  I assure you that by the
18      way it was sent over, there is nothing
19      that you can right click on that would let
20      you open the files individually.  It was
21      all sent as an image file.
22             But we can move on.
23   BY MS. STROM:
24      Q    Mr. Wisser, you can see at the top of
25   Exhibit 3 that this was sent yesterday at 12:59

1   p.m.  Why -- when did you send this to your

2   counsel, these files to your counsel?

3        A    I guess two days ago.

4        Q    Why were these images only sent two

5   days ago to your counsel?

6        A    I think you requested them two days

7   ago.

8        Q    Who requested them two days ago?

9             MR. FREEMAN:  We're going to object

10       to attorney/client privilege.  You're

11       asking about the content of

12       communications.

13            MS. STROM:  No, I'm not asking about

14       the content of the communication, I'm

15       asking who -- on a privilege log, which

16       you've never given us in this case,

17       obviously you have to give the name of the

18       person making the communication and who

19       it's received to, correct?

20            MR. FREEMAN:  Yes.

21            MS. STROM:  And that is what I'm

22       asking for, correct?

23            MR. FREEMAN:  Okay.

24       Q    Who told you look for them two days

25   ago?

1      A    James.

2      Q    Okay.  Before two days ago, were you

3 ever asked to look for all documents related to

4 the photograph at issue in this lawsuit?

5      A    Yeah, I didn't consider these

6 documents -- these are files, picture files,

7 these are not written documents.

8      Q    So until two days ago, it was not

9 your understanding that all electronic files

10 would be considered documents for this lawsuit?

11     A    I guess that's right.  I didn't think

12 that Photoshop or Lightroom files were

13 requested.  They asked me for any, you know,

14 correspondence, written type materials and it

15 seems that as -- it seems that only two days

16 ago James called me up and asked me if I can

17 like produce any Lightroom or Photoshop type

18 files and I said sure, and I looked them up and

19 found them and presented them.

20     Q    Okay.  Absolutely, I don't think

21 that's on you, that you did not understand that

22 in a lawsuit all electronic files are

23 considered documents.

24          Have you now looked for all

25 electronic files related to the photograph at

1  issue in this lawsuit?
2       A    Yes.
3       Q    And have you sent all of those to
4  your counsel?
5       A    Yeah, well.  I mean, well, you can
6  see here and in the second picture in this
7  printout, that these are all, these are
8  these -- these include some other pictures of
9  dishes at the restaurant and they include some
10 pictures of the chef and one of the owners and
11 some of the staff, so that's there but there
12 may be other pictures.
13           No, I don't think there are any other
14 pictures related to that, to that particular
15 dish.  But I think I shot something, like, in
16 the range of 280 pictures that day.  So there
17 are other pictures of the restaurant but not of
18 that particular dish that is in the photograph
19 in question.
20           These are all the photographs I made
21 of that particular dish that I retained and
22 that are still in my files.
23      Q    Mr. Wisser, what do you do for a
24 living?
25      A    I'm a professional photographer and

1  an author.
2      Q    Sorry, how long have you been a
3  professional photographer?
4      A    I started out in 1974 as a, I got a
5  job as a cub reporter on a small town, small
6  town daily in the Hudson Valley called the
7  Peekskill Evening Star.  And I was hired as a
8  reporter, writer.  But with my first paycheck,
9  I went out and I bought a camera, an Olympus
10 OM-1 camera, and I started taking pictures to
11 illustrate my stories and I've done that ever
12 since.
13     Q    My husband used to be in advertising
14 and used his paycheck to buy his first camera
15 too, so it is a similar story.  But not that
16 camera, it was a Nikon something.
17     A    Right.
18     Q    With an S L R, I don't know.
19          Do you have any training to be a
20 photographer, did you -- do you have any
21 training in photography?
22     A    I'm self-taught.  And I was taught by
23 other photographers at the newspapers I worked
24 at.  For example, John Mcelroy (phonetic) who
25 is the photographer of the Peekskill Evening

```
 1        a document that was produced by
 2        plaintiff's counsel but not production
 3        numbered.  It is three pages long and at
 4        the top says, "Gmail forwarding photos of
 5        Ariete/four."
 6             (Defendant's Exhibit 11, E-mails,
 7        marked for identification.)
 8        Q    Mr. Wisser, have you ever seen this
 9   document before?
10        A    Well, I've seen this separate, this
11   appears to have two separate E-mails in them
12   and I've seen them both before but not exactly
13   in this form.
14        Q    So let's take it one at a time.  At
15   the very, very top it says, "Bill Wisser
16   Bill@BillWisserphoto.com to Richard Liebowitz
17   RL@Liebowitzlawfirm.com."
18        A    Right.
19        Q    Is that an E-mail that you sent to
20   Richard Liebowitz?
21        A    Exactly.
22        Q    You said before Richard Liebowitz is
23   one of your attorneys on this?
24        A    Correct.
25        Q    You sent, it was sent Friday July 19,
```

1   2019; is that correct?
2       A   Yes.
3       Q   And is that when you sent this E-mail
4   exchange to Mr. Liebowitz?
5       A   Yes.
6       Q   Had you previously been asked to
7   search for communications relevant for this
8   lawsuit before July 19, 2019?
9       A   Yeah, Richard asked me to find any
10  documents I could, you know, around the whole
11  matter of the Ariete picture.  And this is,
12  this document that you've handed me now
13  contains some of the -- of that.  But there
14  actually, there is more correspondence in that
15  chain and I sent it all to Richard and you
16  probably have it.
17      Q   Had you been asked before July 19,
18  2019 to search for those documents?
19      A   I assume that.  I don't recall if he
20  asked me on July 19 or July 18 or July 12 but
21  some time on or about that time period he asked
22  me to find whatever I could, any correspondence
23  dealing with the Ariete shoot and I did.  I
24  can't tell you exactly what day it was that he
25  asked me to produce this stuff but I'm sure it

1   was -- just, I'm a pretty prompt person and I'm
2   sure I delivered this stuff, you know, within a
3   day or two.
4        Q    Were you aware that there was an
5   order in this lawsuit ordering all documents to
6   be exchanged by ordering the first set of
7   documents to be exchanged on June 23?
8        A    No, I'm not aware of that.
9        Q    Okay.  So below that it looks like
10  there's two E-mails that I think you were
11  referring to before?
12       A    That's correct.
13       Q    The second E-mail starts on the
14  second page; is that correct?
15       A    Well, calling it the second is maybe
16  a bit confusing because it, chronologically it
17  predates the first one.
18       Q    You're absolutely correct, I
19  apologize.  So the earlier E-mail is on the
20  second page, correct?
21       A    Yes.  And this is an incomplete
22  rendering of the entire sequence.  These are
23  two E-mails but I sent Richard more and I think
24  there was some problems in receiving it.  I
25  sent it many times but I can reconstruct for

1  you what the entire conversation was that
2  involved not only me and Jason Odio, who is one
3  of the co-owners of the restaurant. But the
4  restaurant critic --
5          Do you have that document there?
6          MS. STROM: No. I call for its
7      production.
8      A   I mean, it was definitely sent to
9  these guys and I think that they were having
10 some problems. Sometimes when you have to copy
11 an E-mail it doesn't include the full -- how
12 shall I put this? Sometimes when you send an
13 E-mail you don't get the full, they weren't
14 able to separate these things. I had sent them
15 but I could reconstruct the whole sequence and
16 I'd be happy to.
17     Q   We'll do that in one second but I do
18 call for it's production.
19         MR. FREEMAN: Can you specify again
20     the E-mail?
21         MS. STROM: I think you should ask
22     your client. There's a whole exchange
23     here that is not produced and he mentioned
24     something about a restaurant critic so I
25     would confer with your client. You can