```
     J9j3wisc

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   BILL WISSER,

 4                  Plaintiff,              New York, N.Y.

 5             v.                           19 CV 1445 (LGS)

 6   VOX MEDIA, INC.,

 7                  Defendant.

 8   ------------------------------x        Conference

 9                                          September 19, 2019
                                            10:55 a.m.
10
     Before:
11
                     HON. LORNA G. SCHOFIELD,
12
                                            District Judge
13

14
                              APPEARANCES
15

16
     LIEBOWITZ LAW FIRM, PLLC
17        Attorneys for Plaintiff
     BY:  JAMES FREEMAN
18           RICHARD LIEBOWITZ

19   DAVIS WRIGHT TREMAINE, LLP
          Attorneys for Defendant
20   BY:  RACHEL STROM

21

22

23

24

25
```

1            (Case called)
2            MR. LIEBOWITZ:  Richard Liebowitz, Liebowitz Law Firm,
3    counsel for Bill Wisser.  Good morning, your Honor.
4            MR. FREEMAN:  James Freeman, Liebowitz Law Firm on
5    behalf of the plaintiff.
6            THE COURT:  Good morning.
7            MS. STROM:  Good morning.  Rachel Strom on behalf of
8    defendant Vox Media.
9            THE COURT:  Good morning.  So, we're here on a
10   sanctions motion.  And as you undoubtedly know, courts and
11   particularly the Second Circuit in reviewing our decisions is
12   not a fan of sanctions, so only in the most egregious
13   situations would I find that sanctions were warranted.
14           As I understand it here, the basis for the request is
15   that plaintiff's counsel placed the electronic signature of the
16   plaintiff on interrogatory answers, and the plaintiff then
17   testified at his deposition that he didn't know anything about
18   it.  Is that more or less accurate?
19           I know there is also issues of missed discovery
20   deadlines and interrogatory responses that did not entirely
21   line up with what the plaintiff testified.
22           Let me ask Ms. Strom.
23           MS. STROM:  Yes, your Honor.  I've been an attorney
24   for 13 years, and I filed one sanctions motion before Judge
25   Gorenstein which was successful.  It's not something I do on a

1  regular basis.  So this is my second.
2       Just about the electronic signature.  Here is the
3  interrogatory response.  It's not like an S slash.  It looks
4  like the client signed his interrogatories.  And so, we
5  proceeded under the assumption that this was -- it's not also
6  just the signing of the responses.  This is the verification
7  page saying swearing under oath, duly sworn, deposed and says
8  I'm the plaintiff in this action.  I have read plaintiff's
9  answers and objections to defendant's first set of
10 interrogatories.  I know the contents thereof.  I know them to
11 be true.  Under oath, under declaration, has his signature.
12      It turned out in fact he had never read these
13 interrogatory responses, never seen them, and this is not his
14 signature.
15      So there are other discovery violations which have
16 been ongoing and I didn't bring to your attention, some of them
17 fairly I think egregious.  Not even asking his client to look
18 for documents until a month after your Honor ordered documents
19 to be produced I think is fairly egregious, but I have never
20 seen anything like this before.
21      THE COURT:  Thank you.  I'll hear from the plaintiff.
22      MR. FREEMAN:  Yes, your Honor.  So, it's difficult for
23 us to take a position as to the facts of how this document was
24 prepared.  But what we would say --
25      THE COURT:  Why is that?  You submitted it.

1           MR. FREEMAN:  Excuse me?
2           THE COURT:  Why is it difficult for you to take a
3   position as to how the document was prepared?  Mr. Leibowitz
4   submitted it.
5           MR. FREEMAN:  Yes, your Honor.
6           THE COURT:  And filed it.  So I don't understand that
7   comment.
8           MR. FREEMAN:  Well, it wasn't filed, your Honor.  It
9   was served.
10          THE COURT:  Sorry.
11          MR. FREEMAN:  But assuming that everything that
12  Ms. Strom is saying, that it's true that an electronic
13  signature was placed on the verification, what is clear is
14  that --
15          THE COURT:  Are you disputing that?
16          MR. FREEMAN:  We're not disputing that, your Honor.
17          THE COURT:  All right.
18          MR. FREEMAN:  But even if that's true, number one,
19  there's no way we could have prepared those answers without
20  communicating with the client.  Right.  The answers that we've
21  provided to your Honor state, for example --
22          THE COURT:  Let's just back up a second.  Who put the
23  signature on the document?
24          MR. FREEMAN:  We're not sure, your Honor.
25          THE COURT:  Who in the ordinary course in your office

1  puts the signature on the document?
2      MR. FREEMAN:  It's either the attorneys or the
3  research analysts who work at our firm, your Honor.
4      THE COURT:  All right.  Is it the regular practice to
5  put the signature on the verifications for interrogatories and
6  not have the client sign?
7      MR. FREEMAN:  No, it just depends on the circumstance,
8  your Honor.
9      THE COURT:  Okay.  So what were the circumstances
10 here?
11     MR. FREEMAN:  I think they were prepared with having
12 communicated with the client and there was authority --
13     THE COURT:  Do you have any basis to say that, since
14 you don't even know who put the signature on the page?
15     MR. FREEMAN:  Well, I know that we did communicate
16 with the client in preparation for the responses to the
17 interrogatories and the document responses.
18     THE COURT:  How do you know that?
19     MR. FREEMAN:  Because I personally communicated with
20 the client in anticipation of those responses.
21     THE COURT:  Did you prepare the responses?
22     MR. FREEMAN:  I did, your Honor.
23     THE COURT:  So you prepared the responses based on
24 your communications.
25     MR. FREEMAN:  Yes.

1       THE COURT:  And so, the only issue is about the
2  signature.
3       MR. FREEMAN:  Yes.
4       THE COURT:  As opposed to the responses.  That's what
5  you are saying.
6       MR. FREEMAN:  Exactly.
7       THE COURT:  Okay.  You can be seated for just a
8  second.  Let me hear from Ms. Strom.
9       MS. STROM:  Your Honor, that's incorrect.  His client
10 testified quite angrily at me when I kept asking about the
11 interrogatories, why are you asking me about them, I've never
12 seen these before.  I've never seen these responses.  When
13 responses were pointed out to him as correct, he on his own
14 kept saying I know they're incorrect or -- I can get his exact
15 language.  But I have never seen these before, why are you
16 asking me about them, I have not seen these before.
17      He testified himself that the answers were wrong, they
18 were not coming from him, and that it was not his signature.
19      So, I think, quite frankly, forging your client's
20 signature on a verification page is a big deal.  But it is in
21 addition to the fact that he had never even looked at the
22 responses, and that is his sworn testimony, that he had never
23 seen the responses and the responses were incorrect.
24      THE COURT:  Mr. Freeman.
25      MR. FREEMAN:  Yes.  The responses were not incorrect.

1    The responses were incomplete, which is not quite the same.

2             THE COURT:  But the client was saying at the
3    deposition that he didn't essentially know anything about the
4    question or the response.  You have just stated, as an officer
5    of the court, that you spoke to the client before personally
6    preparing the interrogatory responses.

7             MR. FREEMAN:  Yes.

8             THE COURT:  So, do you have time sheets to corroborate
9    that?  Is that from your recollection?

10            MR. FREEMAN:  This is from my recollection that there
11   was a telephone call between myself and counsel -- and
12   Mr. Wisser, in which I asked him who did you license the
13   photograph to.  He said Miami New Times.  We put in the
14   interrogatories Miami New Times.  That is not an incorrect nor
15   a false nor a fraudulent response.  It is 100 percent accurate.
16   Had it said New York Times, it would have been false.

17            So, I don't understand -- I understand why my opposing
18   counsel is outraged that we placed an electronic signature on
19   the verification.  We agree, not best practice.  It's never
20   going to happen again.

21            But, the key point here is that once the fact was
22   recognized, Mr. Wisser then submitted pursuant to Rule 26(e)
23   supplemental responses which he signed, which ratified the
24   original responses, and supplemented the information that they
25   requested, and that information was already known to them

1    because we produced documents in advance of the deposition.  So
2    there's no substantive prejudice, there is no procedural
3    prejudice, we corrected it, and we agree that it was not best
4    practice.
5             THE COURT:  Is it the regular practice of your office
6    to obtain the electronic signature of all your clients?
7             MR. FREEMAN:  We have a file, yeah.  We have
8    electronic signatures sometimes.
9             THE COURT:  Is it your regular practice to get the
10   electronic signature of your clients?
11            MR. FREEMAN:  I wouldn't say it is a regular practice.
12   It happens time to time.  And there are cases where we have
13   affixed an electronic signature on behalf of the client where
14   we can't reach the client in time for the deadline.
15            THE COURT:  Do you know if there was any effort to
16   reach the client about these particular interrogatory answers?
17            MR. FREEMAN:  I honestly don't recall.  We do have a
18   very full docket.  Sometimes we have oftentimes four to five
19   document responses from different cases due on the same day.
20   And we're just churning them out, and sometimes things get,
21   they fall through the cracks.  It's clear that we made -- it's
22   clear --
23            THE COURT:  About how many cases are you handling at
24   any one time?  You personally.
25            MR. FREEMAN:  Me personally, I would say anywhere up

1    to 25 to 30.
2             THE COURT:  This is your case?
3             MR. FREEMAN:  No, this is not.  This was a case that
4    was filed by Mr. Liebowitz.  But then what happens is he files
5    the cases, and when it gets to things like discovery or motion
6    practice, I tend to come in and help out.  Because he has --
7    his docket is actually even greater than my own.
8             THE COURT:  So, when you count your own of 25 to 30
9    plus the ones you help out on, how many are we talking about?
10            MR. FREEMAN:  Upwards of maybe 50.
11            THE COURT:  At any one time?
12            MR. FREEMAN:  Yeah, at any one time on the docket
13   that's currently happening, yes.
14            THE COURT:  How do you keep track of conversations
15   that you have with clients of the firm?
16            MR. FREEMAN:  I can't say -- we don't have like a DTE
17   system where we record our time.  We don't have that because we
18   work on contingency.  We have talked about getting one.
19            THE COURT:  How do you know what this person said?
20   You can't remember what all 50 of these clients are going to
21   say.
22            MR. FREEMAN:  Well, in this particular case, I mean, I
23   can look at what the interrogatory responses were, and I can
24   know that they are accurate because the client provided that
25   information.  There is no way we would have known that Miami

New Times was an authorized licensee, unless that information was communicated to us by the client.

THE COURT: Are you deducing that you talked to the client because there's no way you would have known, or are you representing that you recall the conversation with the client?

MR. FREEMAN: I recall that there was a conversation with the client. There's no way --

THE COURT: No. The question is do you recall, do you remember speaking to this client.

MR. FREEMAN: Yes.

THE COURT: You do.

MR. FREEMAN: I do remember speaking to the client about this case, about the Miami New Times, about that that was an authorized licensee, and that's what I recall. And then of course there was documents in our system in which we used as a basis to respond to the responses.

It turned out, as is often the case, there was additional documents which he provided us after the point in time when we served those requests. We produced them to defendant.

THE COURT: I am going to interrupt you right there. Ms. Strom.

MS. STROM: I was going to say the fact that Miami New Times was an authorized licensee was in the complaint. So there's no information in these interrogatories that weren't

1    from the complaint.

2    And I don't want to interrupt, you're obviously asking
3    the appropriate questions, but I've been frustrated by the
4    response to when I raise this issue, they were saying that this
5    is a technical knickknack and I would be bothering the Court by
6    even raising it. And even now I can't get an answer, did he
7    talk to his clients about these interrogatories.

8    The fact that the Miami New Times was an authorized
9    licensee was well known before. And then he said one -- the
10   first question says: Identify all persons or entities you
11   believe infringed upon your intellectual property rights in
12   this photograph. He listed the defendant.

13   This law firm, on behalf of the client, had filed
14   another lawsuit based on the exact same photograph. So, the
15   fact that information is missing, there's no excuse for that,
16   whether it was coming from the client or from them.

17   So, I'm frustrated by the response as well.

18   THE COURT: So, I'm going to set a briefing schedule
19   for a sanctions motion. And I urge you, Mr. Freeman, we have
20   the transcript, but I expect that you will file a sworn
21   affidavit with the response to the motion with as much detail
22   as you can muster concerning the surrounding facts.

23   So, how long would you like, Ms. Strom?

24   MS. STROM: If it would be possible to have two weeks.

25   THE COURT: That's fine. That's October 3. Response?

J9j3wisc

| | |
|---|---|
| 1 | MR. FREEMAN:  21 days, your Honor. |
| 2 | THE COURT:  Okay.  October 24.  How long for reply? |
| 3 | MS. STROM:  An additional two weeks would be great. |
| 4 | THE COURT:  Okay.  November 7. |
| 5 | MS. STROM:  Your Honor, would it be possible to stay |
| 6 | the discovery?  We have a discovery cutoff date.  I'd like to |
| 7 | get a response on the sanctions motion, if that's possible. |
| 8 | THE COURT:  I'll stay discovery. |
| 9 | MS. STROM:  Thank you very much. |
| 10 | THE COURT:  Okay.  And also I know there is a bond |
| 11 | issue, and I'll hold that in abeyance as well. |
| 12 | MS. STROM:  Thank you. |
| 13 | MR. FREEMAN:  Thank you. |
| 14 | MR. LIEBOWITZ:  Thank you. |
| 15 | (Adjourned) |