UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BILL WISSER | |
| Plaintiff, | Case No. 1:19-cv-01445-LGS |
| - against - | |
| VOX MEDIA, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iv

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 4

PROCEDURAL BACKGROUND............................................................................. 5

ARGUMENT ............................................................................................................. 6


**POINT I:     UNDER THE DOCTRINE OF UNCLEAN HANDS, VOX'S MOTION FOR
               MONETARY RELIEF SHOULD BE DENIED IN ITS ENTIRETY ................ 6**

A.   VOX SHOULD NOT BE AWARDED A FINANCIAL WINDFALL IN ATTORNEYS' FEES WHERE IT
     FAILED TO COMPLY WITH COURT-ORDERED DEADLINES, WITHHELD KEY DOCUMENTS
     FOR MONTHS, AND SERVED FALSE INTERROGATORY RESPONSES ........................................ 7

B.   VOX'S REQUEST TO RECOVER ALL "ATTORNEYS' FEES INCURRED IN DISCOVERY THUS
     FAR" IS GROSSLY DISPROPORTIONATE TO THE CIRCUMSTANCES SURROUNDING LLF'S
     ALLEGED INFRACTIONS AND FURTHER REVEALS VOX'S BAD FAITH ................................ 10

C.   THE PENALTY IMPOSED AGAINST LLF, IF ANY, FOR THE RULE 33(B)(5) INFRACTION
     SHOULD NOT EXCEED THE SUM OF $100.00, PAYABLE TO THE CLERK OF COURT ............. 11


**POINT II:    THE COURT SHOULD DECLINE TO INVOKE ITS INHERENT POWER
               TO SANCTION PLAINTIFF'S COUNSEL......................................................... 11**

A.   BECAUSE VOX HAS UNCLEAN HANDS, THE COURT'S INHERENT POWER TO SANCTION
     SHOULD NOT BE INVOKED ............................................................................................... 12

B.   THE COURT SHOULD ALSO DECLINE TO INVOKE ITS INHERENT POWERS BECAUSE
     DISCOVERY RULES PROVIDE REDRESS FOR LLF'S ALLEGED VIOLATIONS ........................ 13

C.   VOX HAS FAILED TO PRESENT "CLEAR AND CONVINCING" EVIDENCE OF BAD FAITH
     WHICH WOULD WARRANT SANCTIONS UNDER THE COURT'S INHERENT POWERS ........... 15

D.   AS A MATTER OF LAW, THE VERIFICATION DOES NOT AMOUNT TO "FORGERY" BECAUSE IT
     DOESN'T PREJUDICE WISSER'S (OR ANYONE ELSE'S) LEGAL RIGHTS .............................. 16

E.   VOX HAS FAILED TO ESTABLISH THAT LLF COMMITTED FRAUD ON THE COURT ........... 18


**POINT III:   THE COURT SHOULD DECLINE TO SANCTION PLAINTIFF'S
               COUNSEL PURSUANT TO 26(G) OR 37(D) OR SECTION 1927.................... 19**

A.  LLF Did Not Violate Rule 26(G)(1)(A) ........................................................ 19

B.  LLF Did Not Violate Rule 26(G)(1)(B)(II) ................................................... 20

C.  LLF Did Not Violate Rule 37(D) ................................................................ 20

D.  Rule 26(E) Provides a "Safe Harbor" Against Sanctions Based on Initial
    Discovery Responses Which Are Found to be Deficient or Incomplete .............. 21

E.  Sanctions Should Not be Imposed Under 28 U.S.C. § 1927 Because Vox Has Failed
    to Make a "Clear Showing" that LLF's Actions Were Motivated by an Improper
    Purpose, Such as Delay or Harassment ...................................................... 23

**POINT IV:   THE COURT SHOULD AWARD BILL WISSER HIS ATTORNEYS' FEES
TO DEFEND AGAINST VOX'S BAD FAITH SCANDAL-MONGERING . 24**

CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Turkey,*
2012 WL 253313, at \*2 (S.D.Tex. Jan. 25, 2012)--------------------------------------------------13

*Agarwal v. Oregon Mut. Ins. Co.,*
No. 2:11-CV-01384-LDG, 2013 WL 211093, at \*6 (D. Nev. Jan. 18, 2013) --------------------22

*Appeal of Scott Twp.,*
31 Pa. Cmwlth. 505, 509, 377 A.2d 826, 827 (1977)--------------------------------------------------17

*Bernard v. United States,*
25 F.3d 98, 104 (2d. Cir.1994)--------------------------------------------------------------------------23

*Chambers,*
501 U.S. at 50, 111 S.Ct. 2123--------------------------------------------------------------------------13

*Eden v. Eberline Analytical Corp.,*
No. CV 02-0423 JP/LFG, 2005 WL 8163443, at \*3 (D.N.M. Dec. 1, 2005)--------------------22

*European Am. Res., Inc. v. German Am. Inv'rs, Inc.,*
No. 02 CIV. 7938 (RCC), 2004 WL 1161176, at \*2 (S.D.N.Y. May 24, 2004) -----------------18

*Fayemi v. Hambrecht & Quist, Inc.,*
174 F.R.D. 319, 326–27 (S.D.N.Y. 1997)-------------------------------------------------------------12

*First Interregional Equity Corp. v. Haughton,*
1994 WL 364038, at \*4 (S.D.N.Y. July 13, 1994) --------------------------------------------------23

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.,*
No. C03-5340JF(RS), 2007 WL 1848665, at \*6 (N.D. Cal. June 27, 2007) ---------------------10

*Holmes v. All Am. Check Cashing, Inc.,*
No. 2:11-CV-7-NBB-SAA, 2016 WL 552357 at \*2, 2016 U.S. Dist. LEXIS 18917 at \*2 (N.D. Miss. Feb. 10, 2016)---------------------------------------------------------------------------------------14

*Hudson Motors Partnership v. Crest Leasing Enterprises,*
845 F.Supp. 969, 978 (E.D.N.Y.1994)-----------------------------------------------------------------24

*In re Bradley,*
495 B.R. 747, 801 (Bankr. S.D. Tex. 2013). ----------------------------------------------------------11

*In re Dreier LLP,*
450 B.R. 452, 454 (Bankr. S.D.N.Y. 2011) ----------------------------------------------------------17

*In re Sutter*,
543 F.2d 1030, 1035 (2d Cir. 1976)---------------------------------------------------------------15

*JPMorgan Chase Bank, N.A. v. Neovi, Inc.*,
No. 2:06-CV-0095, 2006 WL 3803152, at *4 (S.D. Ohio Nov. 14, 2006) ----------------------14

*Keller v. Mobil Oil Corp.*,
55 F.3d 94, 99 (2d Cir.1995) ---------------------------------------------------------------------24

*Lackey v. SDT Waste & Debris Servs.*,
No. CIV.A. 11-1087, 2013 WL 5772325, at *5 (E.D. La. Oct. 23, 2013) ----------------------13

*Lambert v. Monaco Coach Corp.*,
No. 8:04-CV-608-T-30TBM, 2005 WL 5961075, at *2 (M.D. Fla. Feb. 10, 2005)------------21

*Lexington Ins. Co. v. Newbern Fabricating, Inc.*,
No. 14-CV-610-CVE-TLW, 2016 WL 6652792, at *2 (N.D. Okla. June 16, 2016) -----------21

*Mahan v. Roc Nation, LLC*,
No. 14 CIV. 5075 (LGS), 2016 WL 4718018, at *4 (S.D.N.Y. Sept. 9, 2016) ------------------15

*Matter of Unit, Inc.*,
45 B.R. 425, 433 (Bankr. S.D. Ohio 1984)----------------------------------------------------17

*McCormick v. Cohn*,
No. CV 90-0323 H, 1992 WL 687291, at *4 (S.D. Cal. July 31, 1992)---------------------------- 8

*Melendez v. Illinois Bell Tel. Co.*,
79 F.3d 661, 672 (7th Cir.1996) ---------------------------------------------------------------10

*Murphy v. Cuomo*,
913 F. Supp. 671, 683 (N.D.N.Y. 1996)-------------------------------------------------------15

*Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*,
No. CIV.A.09-CV-11783, 2010 WL 1790354, at *6 (E.D. Mich. May 5, 2010) ----------------14

*Olmstead v. Fentress Cty., Tennessee*,
No. 2:16-CV-00046, 2019 WL 633120, at *5 (M.D. Tenn. Feb. 14, 2019) ----------------------21

*Pentagen Techs. Int'l Ltd. v. United States*,
172 F. Supp. 2d 464, 474 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir. 2003) -------------23

*Pieretti v. Dent Enterprises, Inc.*,
    No. CIV.A. 11-2179, 2011 WL 6425333, at *2 (E.D. Pa. Dec. 21, 2011)------------------------14

*Rice v. City of Chicago*,
    333 F.3d 780, 785 (7th Cir. 2003) ------------------------------------------------------------------ 7

*Rowley v. United States*,
    191 F.2d 949, 950 (8th Cir. 1951) ------------------------------------------------------------------16

*Rubinstein v. Keshet Inter Vivos Tr.*,
    No. 17-61019-CIV, 2018 WL 8899231, at *1 (S.D. Fla. Oct. 29, 2018), *report and recommendation adopted*, No. 17-61019-CIV, 2018 WL 8899306 (S.D. Fla. Nov. 15, 2018) 17

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123, 145 (2d Cir. 2010)------------------------------------------------------------------13

*S. Shore Ranches, LLC v. Lakelands Co., LLC*,
    No. 09–CV–105, 2010 WL 2546112, at *5 (E.D.Cal. Jun. 18, 2010) ----------------------------12

*Salovaara v. Eckert*,
    222 F.3d 19, 35 (2d Cir. 2000)--------------------------------------------------------------------15

*Schlaifer Nance & Co. v. Estate of Warhol*,
    194 F.3d 323, 336 (2d Cir. 1999)-------------------------------------------------------------- 15, 23

*Shafii v. British Airways, PLC*,
    83 F.3d 566, 571 (2d Cir.1996) -------------------------------------------------------------------23

*Stepp's Towing Serv., Inc. v. State Nat'l Ins. Co., Inc.*,
    No. 8:17-CV-3002-T-33AAS, 2018 WL 3389952, at *2 (M.D. Fla. July 12, 2018) ------------15

*Stevens v. Omega Protein, Inc.*,
    No. 00–3326, 2002 WL 1022507, at *3 (E.D.La. May 16, 2002)----------------------------------14

*Thomas v. Schwab*,
    No. 09-CV-13632, 2012 WL 6553773, at *1 (E.D. Mich. Dec. 14, 2012) ----------------------12

*United States v. Gelb*,
    No. 86 CIV. 1552 (CSH), 1991 WL 20011, at *5 (S.D.N.Y. Feb. 4, 1991) ----------------------19

*United States v. Ventura*,
    36 M.J. 832, 834 (A.C.M.R. 1993)----------------------------------------------------------------16

*United States v. Wilson*,
    32 C.M.R. 872 (1962), rev'd, 33 C.M.R. 202 (1963) -------------------------------------------16

*Vennet v. Am. Intercontinental Univ. Online,*
   No. 05 C 4889, 2007 WL 4442321, at *5 (N.D. Ill. Dec. 13, 2007)-------------------------------- 7

*Walker v. Target Corp.,*
   No. 2:16-CV-42-KS-MTP, 2017 WL 5483213, at *1 (S.D. Miss. June 13, 2017) --------------14

*Whetstone Candy Co. v. Nestle USA, Inc.,*
   No. 3:01-CV-415J25HTS, 2003 WL 25686830, at *1 (M.D. Fla. June 2, 2003)----------------21

*Winter Enterprises, LLC v. W. Bend Mut. Ins. Co.,*
   No. 1:17-CV-360, 2019 WL 3413907, at *4 (S.D. Ohio July 29, 2019)-------------------------- 7

*Wood v. Brosse U.S.A., Inc.,*
   149 F.R.D. 44, 48 (S.D.N.Y.1993) ------------------------------------------------------------------------23


STATUTES

28 U.S.C. 1927 --------------------------------------------------------------------------------------------------25
New York's General Obligations Law § 5-1507(1) (McKinney), ------------------------------------- 3


RULES

Fed. R.Civ. 26(g)(3). ------------------------------------------------------------------------------------------13
Fed.R.Civ.P. 16(f)(2). ----------------------------------------------------------------------------------------- 7
Rule 37(d)(1)(A)(ii) -------------------------------------------------------------------------------------------10
Fed.R.Civ.P. 33(b)(1)(3)-------------------------------------------------------------------------------------13


TREATISES

36 Am.Jur.2d *Forgery* § 1 (2001) ------------------------------------------------------------------------16

**PRELIMINARY STATEMENT**

Vox Media, Inc. ("Vox" or "Defendant"), a serial copyright infringer which has been sued by the Liebowitz Law Firm, PLLC ("LLF") more than ten times in the last three years, has moved for sanctions against Plaintiff Bill Wisser ("Plaintiff" or "Wisser")[1] and his counsel for alleged discovery deficiencies that were fully cured prior to the filing of the instant motion.

As a threshold matter, Vox's request for a monetary award should be denied outright under the doctrine of unclean hands.  While Vox attempts to excoriate LLF for producing documents three days past the Court-ordered deadline, Vox itself willfully violated the Court's scheduling order by concealing *key* documents concerning its culpability for almost two months after the deadline.  Under oath, Vox also provided patently false and evasive responses to Wisser's interrogatories with the intent to propogate a sham license defense.

Moreover, Vox has failed to demonstrate that it suffered any prejudice whatsoever, either procedural or substantive, from any alleged discovery deficiencies on the part of Plaintiff or LLF.  Vox has also failed to make a clear showing that the alleged deficiencies amounted to anything more than administrative failure and/or excusable neglect on LLF's part.

Vox should not be accorded a financial windfall in the absence of any showing of prejudice, particularly where Vox itself stands in violation of the Court's order and its discovery obligations.  Indeed, Vox has not asked the Court for an award of its attorneys' fees in connection with the instant motion.  Rather, Vox seeks unprecedented relief in the form of "all fees incurred in discovery thus far."  This grasping display of avarice shows that Vox is more

---

[1] In blatant violation of the Court's order, dated September 19, 2019 [Dkt. # 33 (providing that "Defendant may move for sanctions against Plaintiff's counsel")), Vox's present motion asks the Court to sanction Plaintiff in addition to his counsel.  [*See, e.g.,* Notice of Motion, Dkt. #35 ("granting sanctions against Bill Wisser…") and Vox's Memo, Dkt. # 36, p. 19 of 21 ("Plaintiff and his counsel should be sanctioned for violating the Court's April 9, 2019 Civil Case Management Plan and Scheduling Order…").

concerned with satisfying its blood lust for sanctions against LLF than any good faith effort to ensure compliance with discovery rules.  Vox's blind retaliation against LLF's overall copyright enforcement efforts, which serve to vindicate the public interest, should not be the basis for a monetary award.

Vox accuses Plaintiff's counsel of "forging" Wisser's electronic signature on a Rule 33(b)(5) verification that was served in conjunction with Wisser's responses and objections to Vox's first set of interrogatories (the "Initial Verification").  As a preliminary matter, Vox has invoked the term "forgery," a legal term of art, without even bothering to cite its well-established definition.  This demonstrates, once again, that Vox's motion is driven by an impulsive motive to scandal-monger LLF with inflammatory accusations rather than by any legitimate need to preserve the integrity of the judicial process.[2]  Vox also accuses LLF of "fraud upon the court," even though the Initial Verification was never filed with the Court (by Plaintiff) and was never used as admissible evidence in this action.

As indicated at the September 19 hearing, LLF does not deny that it made a mistake by serving the Initial Verification and concedes that it was not best practice to affix Mr. Wisser's electronically-generated signature to that document.  It is an unfortunate incident that will not be repeated.  However, LLF respectfully submits that, as a matter of law, the Initial Verification does not amount to "forgery, "fraud" or bad faith.  Instead, the Initial Verification was prepared with the good faith belief that Wisser's lead counsel, Richard Liebowitz, had the power of attorney to take such action in the best interests of his client.  As such, the Court should consider LLF's acknowledged deficiencies to be a result of excusable neglect.

---

[2] Case in point: in less than twenty-four hours after Vox filed its motion for sanctions on October 3, 2019, the press published an article entitled "*Vox Media accuses 'Copyright Troll' Atty of Forgery.*" *See* https://www.law360.com/articles/1206126/vox-media-accuses-copyright-troll-atty-of-forgery.

The factors which justify the Court's finding of excusable neglect, as opposed to bad faith or fraudulent intent, include: (a) LLF's longstanding and successful attorney-client relationship with Mr. Wisser based on mutual trust; (b) LLF's engagement letter with Mr. Wisser which grants LLF the power of attorney to act in Mr. Wisser's best interests; (c) LLF's contingency-fee arrangement with Wisser (which guarantees that LLF will act at all times in Wisser's best interest); (d) LLF's pre-filing due diligence concerning Mr. Wisser's claim; (e) LLF's well-founded anticipation of discovery requests based on past practice and seasoned "templates," (f) Mr. Wisser's ratification of his initial responses to Vox's written requests by service of superseding responses pursuant to Rule 26(e); (g) Mr. Wisser's acknowledgment that Liebowitz had his implied authority to affix his electronic signature to routine discovery-related documents (h) New York's General Obligations Law § 5-1507(1) (McKinney), which permits attorneys to sign documents on behalf of their clients; (i) the significant absence of any prejudice whatsoever to Mr. Wisser or Vox; and (j) LLF's unprecedented volume of cases on the docket which has produced administrative burdens (none of which should be regarded as bad faith in light of LLF's commitment to vindicating the public interest through prosecution of meritorious claims).

As defense counsel admitted at the September 19 hearing, but for the Initial Verification served with Plaintiff's initial responses to Vox Media's first set of interrogatories, Vox never would have sought judicial intervention for any other alleged discovery violations.  Yet, only four pages of Vox's sixteen-page principal memorandum address the Initial Verification issue. The majority of Vox's sanction motion is dedicated to discovery issues which, by Vox's own admission, do not even warrant judicial intervention.  Moreover, the notion that LLF "obstructed" discovery is complete nonsense.  LLF has dutifully complied with its discovery

obligations by providing ALL requested information and documents to Vox well in advance of Mr. Wisser's deposition.  Vox does not argue otherwise.

As further demonstrated below, Vox's sanctions motion should be denied in its entirety. Instead, the Court should find that the Initial Verification was a result of LLF's excusable neglect and issue a warning to LLF to refrain from making such error in the future.  In the event the Court finds that punishment is warranted, any monetary sanctions imposed should not exceed the sum of $750.00, payable to the Clerk of Court.

Finally, given Vox's own discovery misconduct, and irresponsible accusations of "fraud" and "forgery" against officers of the Court which are calculated to scandal-monger LLF, the Court should award Mr. Wisser his attorneys' in connection with this motion.

## STATEMENT OF FACTS

This copyright infringement action arises out of Vox's unauthorized reproduction and public display of a copyrighted photograph of a dish of roasted oysters, as featured at the Miami restaurant Ariette (the "Photograph").

Plaintiff is a Miami-based professional photographer in the business of licensing his photographs to online and print media for a fee.  He has over 30 years in the business.  Vox owns and operates the website at URL www.Miami.Eater.com (the "Website") [Answer, Dkt. #11, ¶ 6] Vox has a history of using Plaintiff's photographs without permission. Prior to filing the instant action, Plaintiff has also sued Vox for infringement in February 2018.  *See Wisser v. Vox Media, Inc.* (1:18-cv-1349-GHW)

On or about March 29, 2016, Plaintiff licensed the Photograph to Miami New Times, the only authorized licensee, which published it an article entitled "Closer Look: Ariete in Coconut Grove."

On August 31, 2018, Vox ran an article on the Website entitled *12 Places to Score $1 Oysters in Miami*. See: https://miami.eater.com/maps/best-1-dollar-oysters-miami-map-guide-happy-hour. The article featured the Photograph. [Dkt. #11, ¶10 (Vox Media admits that it updated an article on August 31, 2018 at the Website entitled *12 Places to Score $1 Oysters in Miami*"). Defendant expropriated the Photograph from Ariete's facebook page without seeking permission of either Ariete or Wisser.

As its primary defense to Wisser's infringement claim, Vox claims that it was licensed to re-publish the Photograph on its commercial website via Ariete restaurant. [Dkt. # 11, Answer, ¶ 11 (denying the allegation that "Vox did not license the Photograph from Plaintiff for its article," except admitting that Vox "did not communicate directly with Plaintiff for a license to use the Photograph")]. Defendant also pled an affirmative defense of license: "Plaintiff's claim is barred, in whole or in part, by the defense of license and/or implied license arising from agreements between Vox Media, on the one hand, and other parties, on the other, for use of the Photograph as alleged in the Complaint, as well as any course of dealing with such parties." [Dkt. # 11, Answer, p. 5 of 7]

On March 26, 2019, Defendant served a Rule 68 Offer of Judgment, which was rejected. Relying on the theory that Rule 68 permits adjudged copyright infringers to recover attorneys' fees, Defendant seeks the imposition of a bond for Plaintiff to proceed with litigation. However, by its express terms, the Defendant's Offer of Judgment does not specifically request attorneys' fees' in the event that final judgment in Plaintiff's favor is less favorable than the Rule 68 offer. Accordingly, in addition to the legal flaw in Defendant's theory, the Rule 68 offer served by Defendant in March 2019 suffers from a fatal defect than cannot be remedied without the service of a superseding offer.

## PROCEDURAL BACKGROUND

• On February 14, 2019, Plaintiff, via lead counsel Richard Liebowitz, filed the complaint alleging a single count of copyright infringement. [Dkt. #1]

• On March 12, 2019, Vox filed its answer to the complaint, asserting license as an affirmative defense (3d affirmative defense) and claiming that its infringement was not willful (10th affirmative defense).  [Dkt. #11]

• On March 29, 2019, Vox served an Offer of Judgment Under Rule 68, which was rejected.

• On April 9, 2019, the Court entered a civil case management plan and scheduling order, which provided, *inter alia*, that "Responsive documents shall be produced by 6/23/2019." [Dkt. #15, Order, ¶ 8(c), p. 3 of 5).

• On July 31, 2019, upon the parties' joint request, the Court entered an amended civil case management plan and scheduling order, extending the discovery cut-off.

• On August 14, 2019, Vox moved the Court for an order requiring Plaintiff to post a $45,000 bond on the theory that Rule 68 permits adjudged copyright infringers to recover their attorneys' fees after being held liable for violating the Copyright Act.  [Dkt. # 22]

## ARGUMENT

**POINT I:     UNDER THE DOCTRINE OF UNCLEAN HANDS, VOX'S MOTION FOR MONETARY RELIEF SHOULD BE DENIED IN ITS ENTIRETY**

Vox moves the Court to sanction both Plaintiff and his counsel for producing responsive documents three days past the Court-ordered deadline of June 23, 2019 in violation of Rule 16(f). [*See* Dkt. #15, Civil Case Management plan, stating that "Responsive documents shall be produced by 6/23/2019."]

Under Rule 16(f)(2), an award of reasonable expenses incurred due to non-compliance with the Court's scheduling order may be ordered unless "other circumstances make an award of

expenses unjust." Fed.R.Civ.P. 16(f)(2).

Here, Plaintiff admits that its first batch of responsive documents was not produced until June 26, 2019, three days past the interim deadline.  However, for the following reasons, the Court should decline to sanction Plaintiff or his counsel for the delay.

A.    VOX SHOULD NOT BE AWARDED A FINANCIAL WINDFALL IN ATTORNEYS' FEES WHERE IT FAILED TO COMPLY WITH COURT-ORDERED DEADLINES, WITHHELD KEY DOCUMENTS FOR MONTHS, AND SERVED FALSE INTERROGATORY RESPONSES

Manifest injustice would result if Vox were permitted any monetary recovery on this motion given that Vox violated the Court's scheduling order and purposefully withheld material documents.  Vox also served interrogatory responses that were patently false and evasive in an attempt to conceal how Defendant procured the Photograph.  [Declaration of Richard Liebowitz ("Liebowitz Declr.") ¶¶ 18-35]  While Vox's discovery misconduct does not excuse Plaintiff or LLF from its own non-compliance, it should absolutely preclude Vox from recovering *any* monetary compensation in connection with the present motion.  Instead, any monetary sanctions imposed against Plaintiff or LLF should be payable to the Clerk of Court.

Federal courts have routinely determined that a request for discovery sanctions should be analyzed in light of the movant's own misconduct.  *See, e.g., Rice v. City of Chicago*, 333 F.3d 780, 785 (7th Cir. 2003) (vacating sanctions against plaintiff based on failure to meet discovery deadlines where "defendants were equally careless and negligent in complying with their discovery obligations"); *Vennet v. Am. Intercontinental Univ. Online,* No. 05 C 4889, 2007 WL 4442321, at *5 (N.D. Ill. Dec. 13, 2007) ("[a]ny dilatory conduct or failure to comply with discovery rules should also be considered in light of any discovery misconduct on the part of the party moving for sanctions"); *Winter Enterprises, LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-360, 2019 WL 3413907, at *4 (S.D. Ohio July 29, 2019) ("Both sides come before the Court

with unclean hands; and thus, the Court declines to grant the severe sanctions sought by the Plaintiff. To the extent both sides engaged in misconduct in the course of discovery, an extension of the period of discovery will sufficiently alleviate prejudice to either party and get the case back on track for a timely resolution on the merits."); *McCormick v. Cohn*, No. CV 90-0323 H, 1992 WL 687291, at \*4 (S.D. Cal. July 31, 1992) (reversing judgment on grounds of unclean hands where party violated a court order involving discovery that was highly relevant to the defense of the copyright claims), *aff'd*, 17 F.3d 395 (9th Cir. 1994).

**(1) Vox's Intentional Concealment of Key, Material Documents**

Here, while Plaintiff's delayed disclosure of three days was entirely innocent and non-prejudicial, Defendant also violated the Court's scheduling order by *intentionally* failing to disclose *material* documents until almost <u>two months</u> after the Court-ordered deadline of June 23, 2019.

Plaintiff's document request No. 1 asks Vox to produce "All records, documents and communications concerning defendant's discovery of the Photograph, including all communications to, from and between person or persons who first came across the Photograph." In response, Vox stated it would produce documents responsive to this request. However, Vox's counsel, Rachel Strom, withheld production of the screenshot of Ariete's facebook page until the date of Mr. Wisser's deposition, August 15, 2019, where she sought to ambush him with questions regarding the document. [Liebowitz Declr. ¶ 29, Ex. C] She then failed to produce the document until five days later, arguing that Wisser should go find it himself because it was a matter of public record. This is not the sort of conduct that should rewarded with attorneys fees.

Vox's concealment of material information was not just some mistake. Indeed, Vox had maintained throughout the course of this litigation that it innocently procured the Photograph through a press release issued by the Ariette restaurant, which included a copy of the

Photograph.  If true, this may have provided Vox with an affirmative defense of license or defense to willfulness.  But on August 15, 2019, the date of Wisser's deposition, Vox revealed for the first time that it recklessly expropriated the Photograph from Ariette's Facebook account – *without* Ariette's or Wisser's permission.   [Liebowitz Declr. ¶¶ 36-39]

During the course of Wisser's deposition, Vox presented Wisser with a documentary exhibit showing a screenshot of the Facebook page from which Vox procured the Photograph. Vox failed to produce this key, material document on June 23, as ordered by the Court.  Given that the Facebook screenshot is arguably the most important document in this case, as it provides Plaintiff with hard evidence of Vox's willful infringement, it is fair to presume that Vox intentionally withheld the document and, by doing so, willfully violated the Court's Order.

Additionally, while Vox criticizes Plaintiff for honoring his continuous obligation to produce documents throughout the course of discovery, Vox itself did not make a full production of documents by June 23, 2019.  In violation of the Court's order, Vox also continued to produce document well past the June 23 deadline. [Liebowitz Declr. ¶¶ 37-39]

### (2) Vox's False and Evasive Interrogatory Responses

To make matters worse, several of Vox's responses to Wisser's interrogatories are either patently false or highly evasive. [Liebowitz Declr. ¶¶ 23-27]  For example, Plaintiff's interrogatory No. 2 asks Vox to "Identify any Website and URLs from where defendant obtained the Photograph."  In violation of Rule 26(g)(1)(A) & (B)(ii) and Rule 37(d)(1)(A)(ii), Vox refused to provide a substantive response to this interrogatory. Had Vox complied with its discovery obligations, it would have disclosed that it retrieved the photograph from Ariete's facebook page.

Plaintiff's interrogatory No. 3 asks Vox to "Identify all persons from whom defendant obtained the Photograph."  Vox identified Olee Fowler. In violation of Rule 26(g)(1)(A) &

(B)(ii) and Rule 37(d)(1)(A)(ii), Vox's response is patently false. Defendant did not obtain the Photograph from Olee Fowler, who is Defendant's employee. Fowler is the one who expropriated the photograph from Ariete's facebook page, a fact that was never disclosed until two months past deadline.

When Vox's false and evasive interrogatory responses are viewed in light of Vox's failure to produce the Ariete facebook screenshot until almost two months past deadline, the Court can see that Vox was affirmatively concealing incriminating information about how (and from whom) Vox obtained the Photograph in order to propagate a sham license defense.

Based on the foregoing, it would be categorically unjust to sanction Plaintiff or his counsel for a three-day delay in producing documents where Vox itself intentionally withheld key material documents for almost two months after the June 23 deadline and served patently false and evasive interrogatories calculated to conceal material information about Vox's level of culpability.

**B.** **VOX'S REQUEST TO RECOVER ALL "ATTORNEYS' FEES INCURRED IN DISCOVERY THUS FAR" IS GROSSLY DISPROPORTIONATE TO THE CIRCUMSTANCES SURROUNDING LLF'S ALLEGED INFRACTIONS AND FURTHER REVEALS VOX'S BAD FAITH**

As a matter of law, "district courts should only impose sanctions that are 'proportionate to the circumstances surrounding a party's failure to comply with discovery rules.' *Melendez v. Illinois Bell Tel. Co.,* 79 F.3d 661, 672 (7th Cir.1996); *see also Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C03-5340JF(RS), 2007 WL 1848665, at *6 (N.D. Cal. June 27, 2007) ("In fashioning an appropriate sanctions order, the Court is mindful of the need to punish and deter intentional acts or omissions contrary to the rules of discovery, but at the same time to refrain from formulating a remedy out of all proportion to the actual harm wrought by the failure to meet those discovery obligations.")

Here, Vox has made no showing of any kind that it suffered any prejudice as a result of the alleged discovery infractions.  Plaintiff produced every document Vox asked for and LLF cured any deficiencies in a timely manner.  This motion is about scandal-mongering LLF in retaliation for its copyright enforcement efforts against Vox, a serial copyright infringer.  Vox does not deserve to be awarded a single dollar for its efforts, particularly in light of the inflammatory accusations made against officers of the Court.

C.    THE PENALTY IMPOSED AGAINST LLF, IF ANY, FOR THE RULE 33(b)(5) INFRACTION SHOULD NOT EXCEED THE SUM OF $100.00, PAYABLE TO THE CLERK OF COURT

Even in cases where federal courts have found that an attorney *filed* six separate documents with the court using unauthorized electronic signatures of the client, the monetary sanctions imposed against the attorney did not exceed the sum of $100.00 per violation, or a total of $600.00.  *In re Bradley*, 495 B.R. 747, 801 (Bankr. S.D. Tex. 2013).

Here, unlike *In re Bradley*, the Initial Verification was not filed with the Court and there is no evidence that LLF acted in bad faith in affixing Mr. Wisser's electronic signature to that document.  At best, Defendant has only demonstrated excusable neglect.  Under these circumstances, it would be manifestly unjust to impose monetary sanctions against LLF in the amount exceeding $100 imposed by the court in *In re Bradley*, 495 B.R. 747, where bad faith was found and where the offending documents had actually been filed on the public record.

POINT II:    THE COURT SHOULD DECLINE TO INVOKE ITS INHERENT POWER TO SANCTION PLAINTIFF'S COUNSEL

Vox asks the Court to invoke its inherent powers to sanction Plaintiff's counsel on account of Plaintiff's initial responses to Vox's written discovery requests. Vox's attempt to invoke the Court's inherent power is designed to maximize the amount of monetary sanctions

11

that may be awarded.  After all, Vox has not asked the Court to award its attorneys' fees for making the instant motion.  Rather, Vox seeks all "attorneys' fees incurred in discovery thus far" [Dkt. #36, p. 21 of 21], regardless of the fact that Vox suffered no prejudice of any kind as a result of the alleged discovery violations.  For the following reasons, the Court should decline to invoke its inherent power to sanction Plaintiff's counsel.

## A.   BECAUSE VOX HAS UNCLEAN HANDS, THE COURT'S INHERENT POWER TO SANCTION SHOULD NOT BE INVOKED

"Courts have refused to invoke their inherent authority to impose sanctions where the party requesting sanctions has unclean hands." *Thomas v. Schwab*, No. 09-CV-13632, 2012 WL 6553773, at *1 (E.D. Mich. Dec. 14, 2012); *see also S. Shore Ranches, LLC v. Lakelands* Co., LLC, No. 09–CV–105, 2010 WL 2546112, at *5 (E.D.Cal. Jun. 18, 2010) ("Both parties have a form of 'unclean hands,' and the Court will not use its inherent authority to reward one party over the other."); *Fayemi v. Hambrecht & Quist, Inc.,* 174 F.R.D. 319, 326–27 (S.D.N.Y. 1997) (applying unclean hands maxim and refusing to impose evidentiary sanction).[3]

As explained in Point I, *supra*, Vox's hands are bedraggled and impure.  Vox should not be rewarded for its blatant violations of its discovery obligations, material concealment of key facts, inflammatory accusations, or its attempt to sanction Bill Wisser even contrary to this Court's order.

---

[3] This is particularly true in cases such as the present which are intended to vindicate the public interest through prosecution of a serial copyright infringer.  *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815, 65 S. Ct. 993, 998, 89 L. Ed. 1381 (1945) (where a suit in equity concerns the public interest as well as the private interests of the litigants this doctrine [of unclean hands] assumes even wider and more significant proportions. For if an equity court properly uses the maxim to withhold its assistance in such a case it not only prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public).

**B.    THE COURT SHOULD ALSO DECLINE TO INVOKE ITS INHERENT POWERS BECAUSE DISCOVERY RULES PROVIDE REDRESS FOR LLF'S ALLEGED VIOLATIONS**

Both the Supreme Court and Second Circuit have cautioned district courts not to invoke its inherent power where a Rule provides adequate basis to impose sanctions. *Chambers,* 501 U.S. at 50, 111 S.Ct. 2123 (stating that where challenged conduct arises which "could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power."); *S. New England Tel. Co. v. Glob. NAPs Inc.,* 624 F.3d 123, 145 (2d Cir. 2010) (finding district court erred where sanctions were imposed under its inherent power rather than Rule 37) (citation omitted). Here, the conduct relating to the Initial Verification is specifically addressed by several rules.

First, Rule 26(g)(3) of the Federal Rules of Civil Procedure, entitled "Sanction for Improper Certification," provides in pertinent part:

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.

Fed. R.Civ. 26(g)(3).

Second, Rule 33(b)(5), which governs interrogatories to parties, requires that "[t]he person who makes the answers must sign them, ..." Fed.R.Civ.P. 33(b)(5). Where a party is alleged to have violated this rule, courts typically order the offending party to cure the defect without imposition of any monetary sanctions.  *See, e.g., Lackey v. SDT Waste & Debris Servs.,* No. CIV.A. 11-1087, 2013 WL 5772325, at *5 (E.D. La. Oct. 23, 2013) ("courts have found that a signing defect can be remedied where a party verifies the answers and signs the Verification"); *Adams v. Turkey,* 2012 WL 253313, at *2 (S.D.Tex. Jan. 25, 2012) ("plaintiff points out that defendants Molina and Stewart failed to attest to their interrogatory responses, nor did they sign them, as required by Fed.R.Civ.P. 33(b)(1)(3) and (5) . . . Defendants admit this error . . .

However, both Molina and Stewart have remedied this defect by verifying their answers and signing the verification . . . . Thus, this objection has been rendered moot, and is denied as such."); *Stevens v. Omega Protein, Inc.,* No. 00–3326, 2002 WL 1022507, at \*3 (E.D.La. May 16, 2002) ("plaintiff must provide the required verification of all interrogatory answers, including the supplemental answers required by this order, signed under oath by plaintiff himself, not his counsel, as required by Rule 33(b)."); *Holmes v. All Am. Check Cashing, Inc.*, No. 2:11-CV-7-NBB-SAA, 2016 WL 552357 at \*2, 2016 U.S. Dist. LEXIS 18917 at \*2 (N.D. Miss. Feb. 10, 2016) (where defendant failed to sign interrogatory responses, court gave it seven days to do so, rather than imposing sanctions).

Even where a party serves a false verification, courts have declined to impose sanctions. *See Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc*., No. CIV.A.09-CV-11783, 2010 WL 1790354, at \*6 (E.D. Mich. May 5, 2010) ("Defendant further contends that Plaintiff should be sanctioned for providing a false verification of its interrogatory responses in violation of Fed.R.Civ.P. 33(b)(3). The Court finds that sanctions are not appropriate at this time. Defendant's request for sanctions is denied);

Indeed, Courts have also recognized that Rule 33(b)(5) may not even require strict compliance. *Pieretti v. Dent Enterprises, Inc.,* No. CIV.A. 11-2179, 2011 WL 6425333, at \*2 (E.D. Pa. Dec. 21, 2011) ("we credit these answers even though Dent failed to sign them as required by Rule 33(b)(5) of the Federal Rules of Civil Procedure."); *see also JPMorgan Chase Bank, N.A. v. Neovi, Inc.,* No. 2:06-CV-0095, 2006 WL 3803152, at \*4 (S.D. Ohio Nov. 14, 2006) ("there is not an extensive amount of commentary on Rule 33(b) in the Advisory Committee notes"); *Walker v. Target Corp.,* No. 2:16-CV-42-KS-MTP, 2017 WL 5483213, at \*1 (S.D. Miss. June 13, 2017) ("while Plaintiff may have been lackadaisical in her obligation to

provide signed interrogatory responses, Defendant has not articulated any prejudice that was created by the delay. Defendant had the same information available to it for three months before it received the signed responses."); *Stepp's Towing Serv., Inc. v. State Nat'l Ins. Co., Inc.,* No. 8:17-CV-3002-T-33AAS, 2018 WL 3389952, at \*2 (M.D. Fla. July 12, 2018) ("Nothing in Rule 33(b)(5) . . . requires that Ms. Masyada's signature be notarized.");

As there are express Rules that are specifically designed to address the verification at issue, there is no need for the Court to invoke its inherent power to sanction.

**C.    VOX HAS FAILED TO PRESENT "CLEAR AND CONVINCING" EVIDENCE OF BAD FAITH WHICH WOULD WARRANT SANCTIONS UNDER THE COURT'S INHERENT POWERS**

The Second Circuit's holding in *Schlaifer Nance Co., Inc. v. Est. of Warhol,* 194 F.3d 323, 340 (2d. Cir. 1999) establishes that sanctions against an attorney may not be sustained under § 1927 (or the Court's inherent power) where the attorney's action was nothing more than "the result of poor legal judgment." *Id.* (reversing sanctions imposed under § 1927 because "poor legal judgment" is not sanctionable where "there is no evidence to suggest that [Appellants] had utterly no basis for their subjective belief in the merits of their case").

Indeed, *Schlaifer*'s holding is consistent with longstanding Second Circuit authority dating back more than forty years.  *See In re Sutter*, 543 F.2d 1030, 1035 (2d Cir. 1976) ("we agree that attorneys should not be disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment") (internal quotations omitted); *accord Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000) (reversing sanctions upon finding that an attorney's meritless actions showed "poor legal judgment" but did not warrant sanctions under § 1927).[4]

---

[4] *See also Mahan v. Roc Nation, LLC*, No. 14 CIV. 5075 (LGS), 2016 WL 4718018, at \*4 (S.D.N.Y. Sept. 9, 2016) (finding that attorney's conduct on appeal, "albeit misguided, was not in bad faith" because attorney "articulated a legal basis for his appeal that, while meritless, does not evidence bad faith."); *Murphy v. Cuomo*, 913 F. Supp. 671, 683 (N.D.N.Y. 1996) ("[t]he Court tends to believe that plaintiff's counsel was merely deluded by naivete, overzealousness, disorganization, imprudence, or a combination of such factors, rather than true bad faith.").

Here, the evidence on record demonstrates that while LLF made a mistake by using Mr. Wisser's electronic signature on a Rule 33(b)(5) verification, such mistake does not amount to bad faith or willful conduct that would warrant the imposition of sanctions.  [Liebowitz Declr. ¶¶ 47-57]  Mr. Liebowitz harbored the good faith belief that he had the power of attorney to do so, based on his longstanding relationship with the client. [*Id.*]  Bill Wisser has also acknowledged in a sworn affidavit, duly notarized, that Liebowitz had his implied authorization to sign routine discovery-related documents.  [Wisser Declr. ¶ 33-36]   There has been no showing by Vox that LLF harbored some bad faith intent to deceive or defraud.

**D.    AS A MATTER OF LAW, THE VERIFICATION DOES NOT AMOUNT TO "FORGERY" BECAUSE IT DOESN'T PREJUDICE WISSER'S (OR ANYONE ELSE'S) LEGAL RIGHTS**

Vox hurls the accusation of forgery at officers of this Court without even bothering to cite its well-established legal definition.  Such professional irresponsibility on the part of Vox's counsel, Rachel Strom, is itself sanctionable.

The common law definition of forgery, dating back decades, requires a showing of prejudice to another's legal rights.  *See, e, g.*, 36 Am.Jur.2d *Forgery* § 1 (2001) (defining forgery as "the fraudulent making or alteration of a writing to the prejudice of another's rights"); *Rowley v. United States*, 191 F.2d 949, 950 (8th Cir. 1951) (defining "The fraudulent making or alteration of a writing to the prejudice of another man's rights."); *United States v. Ventura*, 36 M.J. 832, 834 (A.C.M.R. 1993) ("The offense is only established where the false and fraudulent making or altering of the signature of another on a writing, or the knowing uttering, offering, issuing or transfer of such writing would, if genuine, *"apparently impose a legal liability on another or change his legal right or liability to his prejudice."* UCMJ, art. 123); *United States v. Wilson*, 32 C.M.R. 872 (1962), rev'd, 33 C.M.R. 202 (1963) (adopting the common law definition of forgery which requires, inter alia, a specific intent to defraud and a writing which

might operate to the legal, as distinguished from some other, prejudice of another); *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2018 WL 8899231, at *1 (S.D. Fla. Oct. 29, 2018), *report and recommendation adopted*, No. 17-61019-CIV, 2018 WL 8899306 (S.D. Fla. Nov. 15, 2018) ("To this day, Justice Blackstone's definition of the offense has stood the test of time: forgery is "the fraudulent making or alteration of a writing to the prejudice of another's rights." 4 Blackstone, *Commentaries* 247-48 (Christian ed. 1809)).

Here, Wisser has affirmed under penalty of perjury that he suffered no prejudice whatsoever to his legal rights as a result of the deficient Rule 33(b)(5) verification. [Wisser Declr. ¶ 34]  That should be the end of the matter.  This is not a case where an attorney bound his client to some legal document, such as a settlement agreement, to the prejudice of the client's legal rights.  *See, e.g., In re Dreier LLP*, 450 B.R. 452, 454 (Bankr. S.D.N.Y. 2011) (presents the question whether a client is bound when his attorney forges the client's signature to a settlement he never authorized).

It should also be emphasized that Mr. Wisser ratified the initial interrogatory responses by serving superseding responses and signing a fresh verification.  [Wisser Declr. ¶ 38-39]

"A client ratifies his attorney's act if he does not repudiate it promptly upon receiving knowledge that the attorney has exceeded his authority . . . Indeed, a client makes his attorney's act his own if he does not disavow it the first moment he receives knowledge that his attorney has transcended his authority."  *Matter of Unit, Inc.,* 45 B.R. 425, 433 (Bankr. S.D. Ohio 1984) (quoting *Yarnall v. Yorkshire Worsted Mills,* 370 Pa. 93, 87 A.2d 192, 193 (1952)); *see also Appeal of Scott Twp.,* 31 Pa. Cmwlth. 505, 509, 377 A.2d 826, 827 (1977) ("it is clear that where a litigant does not attempt to repudiate immediately the authority of his counsel to enter into a settlement, but rather accepts benefits flowing from the settlement, he ratifies the act of his

17

attorney and will not later be heard to complain that the attorney acted without authority.").

Here, any claim that LFF committed "forgery" by affixing Plaintiff's electronic signature to the Initial Verification is belied by the fact that Wisser ratified his counsel's action by promptly serving corrected responses to the Vox's first set of interrogatories, along with a superseding verification which was executed via HelloSign.  This fact alone, which Vox cannot dispute, defeats any allegation of "forgery," as that term is defined at common law.

As a matter of law, the Court should summarily reject Rachel Strom's careless and inflammatory accusations of forgery, which are based more upon Vox's blood lust for scandal-mongering than any well-established legal term of art.

### E.  VOX HAS FAILED TO ESTABLISH THAT LLF COMMITTED FRAUD ON THE COURT

In *Leber–Krebs, Inc. v. Capitol Records,* 779 F.2d 895 (2d Cir.1985), the Second Circuit set forth the elements of fraud upon the court as follows: (1) the defendant's misrepresentation to the court; (2) the impact on the motion as a consequence of that misrepresentation; (3) the lack of an opportunity to discover the misrepresentation and either bring it to the court's attention or bring an appropriate corrective proceeding; and (4) the benefit the defendants derived by inducing the erroneous decision.

"An independent action for fraud upon the court requires an element of fraud directed at and involving the court itself." *European Am. Res., Inc. v. German Am. Inv'rs, Inc.,* No. 02 CIV. 7938 (RCC), 2004 WL 1161176, at *2 (S.D.N.Y. May 24, 2004) (citing *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1325 (2d Cir. 1995) ("[f]raud upon the court as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication"). Fraud on the court must be established by clear and convincing evidence. *Shangold,* 2006 WL 71672, at *4; *see also United States v. Gelb*, No. 86 CIV. 1552

(CSH), 1991 WL 20011, at *5 (S.D.N.Y. Feb. 4, 1991) ("an honest error, no matter how

egregious, does not rise to the level of fraud.")

Here, Vox attempts to equate the deficient Rule 33(b)(5) verification with "fraud upon

the court."  However, that document was never filed with the Court and thus, could not have

been directed at the Court.  Moreover, Vox has failed to cite any authority for the proposition

that an unauthorized signature amounting to forgery constitutes "fraud upon the court."  Even in

the most egregious cases involving attorney-related forgery, federal courts have not equated such

transgression with fraud upon the court, particularly in the absence of any showing of

detrimental reliance or prejudice.

**POINT III:**   **THE COURT SHOULD DECLINE TO SANCTION PLAINTIFF'S**
              **COUNSEL PURSUANT TO 26(g) or 37(d) or SECTION 1927**

Next, Defendant asks the Court to sanction Plaintiff's counsel for "willful failure to

provide discovery." [D's Memo, Dkt. # 36, pp. 15-19 of 21, Point B].  Defendant seeks sanctions

under Rule 26(g), 37(d) and 28 U.S.C. 1927.  In addition to all the reasons set forth in Point I,

*supra*, this motion should be denied.

**A.**    **LLF DID NOT VIOLATE RULE 26(G)(1)(A)**

Rule 26(g)(1)(A) provides that "[b]y signing, an attorney or party certifies that to the best

of the person's knowledge, information, and belief formed after a reasonable inquiry . . . with

respect to a disclosure, it is complete and correct as of the time it is made.

Here, the evidence shows that Liebowitz conducted due diligence respecting Mr.

Wisser's claim.  [Wisser Decl. ¶¶ 28-30]  On its face, nothing in Rule 26(g) requires attorneys to

make reasonable inquiry only after written discovery responses are served.  LLF has a

longstanding relationship with Wisser and litigates similar cases all the time.  It anticipates

19

discovery requests, which are strikingly similar in cases such as this, and performs a "data download" at the time it detects the infringement.  [Wisser Decl. ¶¶ 28-30]

The initial responses here were correct and either complete or substantially complete at the time they were made. When deficiencies were detected, only minor supplementation was required which did not in any way prejudice Vox given that documents had already been produced which provided the information sought through interrogatories.  [Liebowitz Declr. ¶¶ 47-50; Wisser Decl. ¶¶ 38-40]

**B.     LLF DID NOT VIOLATE RULE 26(G)(1)(B)(II)**

Defendant also moves for sanctions under Rule 26(g)(1)(B)(ii), which provides that "with respect to a discovery request, response, or objection, it is . . . not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed.R.Civ.P. 26(g)(1)(B)(ii).

Vox has failed to show that LLF served any discovery response for an improper purpose, such as to cause delay or harass.  This Rule only applies to *Vox's conduct* which sought to conceal material information directly related to its culpability, as per Point I, *supra.*

**C.     LLF DID NOT VIOLATE RULE 37(d)**

Defendant also moves for sanctions under Rule 37(d).  This motion should be denied.

First, Vox's contention that incomplete response to interrogatories warrants sanctions under Rule 37(d) is not supported by any legal authority.  Rule 37(d) permits sanctions where a party fails to respond to interrogatories.  If every party where subjected to sanctions for providing incomplete initial responses, the Court would be flooeded with sanctions motions.

Second, as illustrated in the next point, Plaintiff supplemented his responses to Vox's first set of interrogatories under Rule 26(e) *before* Vox sought judicial intervention.  Under such

circumstances, sanctions under 37(d) should be denied.

**D.**    **RULE 26(E) PROVIDES A "SAFE HARBOR" AGAINST SANCTIONS BASED ON INITIAL DISCOVERY RESPONSES WHICH ARE FOUND TO BE DEFICIENT OR INCOMPLETE**

The folly of Vox's motion is that it entirely ignores Rule 26(e), which provides that

"[a] party who has made a disclosure under Rule 26(a) ... must supplement or correct its disclosure or response ... in a timely manner if the party learns that in some material respect the disclosure is incomplete or incorrect or if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Fed.R.Civ.P. 26(e)(1)(A).

"Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete." *Whetstone Candy Co. v. Nestle USA, Inc.,* No. 3:01-CV-415J25HTS, 2003 WL 25686830, at *1 (M.D. Fla. June 2, 2003); see also *Bowling v. Hasbro, Inc.,* No. 05-229S, 2007 WL 3274328, at *2 (D.R.I. Nov. 5, 2007) (adherence to Rule 26(e)(2), which requires timely amendment to discovery disclosures, is necessary for litigation to function efficiently); *Lambert v. Monaco Coach Corp.,* No. 8:04-CV-608-T-30TBM, 2005 WL 5961075, at *2 (M.D. Fla. Feb. 10, 2005) ("Rule 26(e)(1) affords the Plaintiff an opportunity to supplement his disclosures, and there is adequate time remaining before trial to cure any prejudice to the Defendant").

Consistent with the purpose of Rule 26(e), Courts decline to impose sanctions where the supplementation is harmless. *Lexington Ins. Co. v. Newbern Fabricating, Inc.,* No. 14-CV-610-CVE-TLW, 2016 WL 6652792, at *2 (N.D. Okla. June 16, 2016)  ("even if Gavilon's [Rule 26e] supplement was untimely, sanctions are not appropriate if the supplementation was harmless."); *Olmstead v. Fentress Cty., Tennessee,* No. 2:16-CV-00046, 2019 WL 633120, at *5 (M.D. Tenn. Feb. 14, 2019) ("Even if the Court were to find that Defendants' supplementing of the Miller declaration was untimely and in violation of Rule 26(e)(1), Olmstead is not entitled

to sanctions under Rule 37(c)(1) because that violation was harmless.").

Further, Rule 26(e) contemplates that the duty to supplement discovery disclosures continues up to the time of trial. *Agarwal v. Oregon Mut. Ins. Co.,* No. 2:11-CV-01384-LDG, 2013 WL 211093, at *6 (D. Nev. Jan. 18, 2013) ("The Advisory Committee Notes on the 1993 Amendment to rule 26(e) state, '[s]upplementation should be made with special promptness as the trial date approaches,' suggesting that the duty continues up to the time of trial); *Eden v. Eberline Analytical Corp.,* No. CV 02-0423 JP/LFG, 2005 WL 8163443, at *3 (D.N.M. Dec. 1, 2005) ("Supplementing the initial disclosures at this point in the litigation would not disrupt the trial because a trial date has not been set yet.").

Here, Wisser served his superseding interrogatory responses on August 15, 2019. [Wisser Declr. ¶¶ 38-40]  Therefore, Vox cannot possibly claim, and has not even tried to claim, that it was prejudiced by the allegedly deficient responses made as part of Wisser's initial responses to Vox's document requests and interrogatories.  The reference made to Vox's penchant for litigating "technical knick-knacks" is that whatever deficiencies may have existed in Wisser's written discovery responses of June 7, 2019 were completely harmless.  The alleged deficiencies in such responses had no impact of any kind on the merits of this case or the ability for the parties to depose key witnesses.

While Vox has requested a second deposition of Wisser to cross-examine him about his superseding interrogatory answers, Vox has failed to make even a cursory showing of why a second deposition would be necessary.  After all, there is no new *material* information in the superseding interrogatory responses that was not already known to Vox prior to August 15, 2019 as a result of Wisser's comprehensive document production. [Wisser Declr. ¶¶ 39-40]

Vox claims that Wisser initial response to Interrogatory No. 1 was incomplete because it

did not identify all third-party infringers.  But once again, Vox is harping on an immaterial

technicality.  The identity of third-party infringers is wholly irrelevant to any claim or defense in

this proceeding.  Vox's Interrogatory No. 1 is just seeking information for the sake of its own

curiosity.

**E.    SANCTIONS SHOULD NOT BE IMPOSED UNDER 28 U.S.C. § 1927 BECAUSE VOX HAS FAILED TO MAKE A "CLEAR SHOWING" THAT LLF'S ACTIONS WERE MOTIVATED BY AN IMPROPER PURPOSE, SUCH AS DELAY OR HARASSMENT**

Section 1927 authorizes the imposition of sanctions when "there is a clear showing

of bad faith on the part of an attorney." *Shafii v. British Airways, PLC,* 83 F.3d 566, 571 (2d

Cir.1996); *accord Oliveri,* 803 F.2d at 1273; *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000).

Indeed, "[b]ad faith is the key element in the imposition of § 1927 sanctions...." *Wood v. Brosse*

*U.S.A., Inc.,* 149 F.R.D. 44, 48 (S.D.N.Y.1993), which 'is highly unusual and requires a clear

showing of bad faith," *First Interregional Equity Corp. v. Haughton,* 1994 WL 364038, at *4

(S.D.N.Y. July 13, 1994).

As with sanctions imposed pursuant to a court's inherent power, in the section 1927

context, bad faith may be inferred "only if actions are so completely without merit as to require

the conclusion that they <u>must have been undertaken for some improper purpose such as</u>

<u>delay</u>." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quoting

*Shafii,* 83 F.3d at 571 (internal quotation marks omitted)).

In addition to delay, examples of improper motivation include harassment, i.e., " a pattern

of litigation designed to evade previous rulings," *Pentagen Techs. Int'l Ltd. v. United States*, 172

F. Supp. 2d 464, 474 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir. 2003) or the "seeking [of]

some collateral advantage or corresponding detriment to the [adverse party] which is outside the

legitimate ends of process," *Bernard v. United States,* 25 F.3d 98, 104 (2d. Cir.1994).

Other types of acts that would justify sanctions under the "bad faith" test of section 1927 include "resubmitting a motion that had previously been denied;" "bringing a motion based on 'facts' the opposite of which were previously found by the court;" "making several insupportable bias recusal motions and repeated motions to reargue;" "continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased;" and "waiting until the eve of trial before making a jury demand." *Hudson Motors Partnership v. Crest Leasing Enterprises,* 845 F.Supp. 969, 978 (E.D.N.Y.1994); *Keller v. Mobil Oil Corp.,* 55 F.3d 94, 99 (2d Cir.1995).

Thus, under controlling Second Circuit law, bad faith can only be inferred to establish the requisite second factor (i.e., improper purpose) where Defendants have made a clear showing that the purpose of the motion is *collateral* to the prayer for relief sought or there is some kind of repeated and continuous failure on the part of an attorney to follow the Court's orders.  But there is not a scintilla of evidence showing that Liebowitz's actions were motivated by a collateral purpose such as delay or harassment.  Nor is there any evidence that Liebowitz has repeatedly failed to abide by this Court's orders.

**POINT IV:** **THE COURT SHOULD AWARD BILL WISSER HIS ATTORNEYS' FEES TO DEFEND AGAINST VOX'S BAD FAITH SCANDAL-MONGERING**

For all the reasons stated herein, and in the supporting declarations, the Court should order Vox and Rachel Strom, Esq. jointly and severally, to pay Bill Wisser's attorneys' fees in connection with this frivolous motion.  Vox's unclean hands, material concealment of key documents, violations of the Court's orders (which includes making sanctions motion against Mr. Wisser himself), false and evasive interrogatory responses, bad faith gamesmanship, inflammatory scandal-mongering against officers of the Court, when viewed in their totality, justify a finding of bad faith motivation that warrants the imposition of an attorneys' fee award

24

under the Court's inherent power or 28 U.S.C. 1927.

## **<u>CONCLUSION</u>**

Based on the foregoing, Plaintiff and Counsel respectfully request that the Court DENY Defendant's motion for sanctions.  In the event sanctions are imposed, the amount should not exceed $100.00 payable to the Clerk of Court.  Further, the Court should award Plaintiff his attorneys fees' in connection with the present motion, to be paid by Vox and Rachel Strom, jointly and severally.

Respectfully Submitted,

**<u>/richardliebowitz/</u>**
Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580

*Counsel for Plaintiff Bill Wisser*

25