UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BILL WISSER

                              Plaintiff,                    Case No. 1:19-cv-01445-LGS

        - against -

VOX MEDIA, INC.,

                              Defendant.


## <u>DECLARATION OF RICHARD LIEBOWITZ</u>

    I, Richard Liebowitz, hereby declare under the penalty of perjury that the following is true and correct to the best of my personal knowledge and belief:

    1.      I submit this declaration in opposition to the motion for sanctions filed by Defendant Vox Media, Inc. ("Vox").

**<u>My Background</u>**

    2.      I am the founder and sole member of Liebowitz Law Firm, PLLC ("LLF"), which began filing cases in January 2016.  Since that time, I have filed over 1800 copyright infringement cases throughout the United States, approximately 1100 of which have been prosecuted in this Circuit. We mostly represent individuals who are the original authors and owners of their copyrighted works.

    3.      LLF seeks to vindicate the public interest by ensuring that the rights of individual photographers are protected against the corporate entities which seek to exploit their property without authorization.  The end goal of copyright litigation is to ensure that a fully functioning

licensing market exists for commercial use of images.  We want to make sure that our clients can continue to make a living doing what they love.

4.     It is no secret that LLF is involved in prosecuting a high volume of cases. The number of lawsuits filed by my firm primarily shows that violation of the Copyright Act via unauthorized use of photographic materials is an epidemic.  Corporate theft is rampant. Photographers are retaining LLF to file federal lawsuits because there is no other means for them to enforce their rights, particularly given the Congressional failure to establish a Copyright court to help streamline these types of claims.

5.     Since the advent of on-line publishing, commercial publishers have developed an unfortunate custom and practice of freely expropriating whatever images they want from the internet because it is easy to do and unlikely to be detected by law enforcement.  This practice has decimated the licensing market for such works as no commercial entity is going to pay for content that can be taken for free.  LLF has spearheaded a movement to end this practice by securing legal precedent which upholds copyright protections for newsworthy photographs. Federal courts which rule in photographers' favor will help create a fully functioning market whereby publishers must seek licenses from content generators such as Mr. Wisser.

6.     Although Vox faults us for not settling the case for what it considers to be a reasonable amount, it must be emphasized that settlements do nothing do vindicate the public interest.  Only judgments of liability against the copyright infringer can serve that purpose, which can be obtained through summary judgment, at trial or on default.

6.     While high volume litigation is necessary to enforce the rights of content creators, it comes with its disadvantages.  My firm has suffered a series of administrative failures because the volume of work cannot be serviced with perfection by the resources available.  As with any

industry, strict compliance requires ample resources.  We don't see many Am 100 law firms get

sanctioned because they employ layers of partners, associates, paralegals, litigation support

personnel, secretaries, clerks and the like to ensure that each litigation runs smoothly.  We don't

have that luxury.  So we work with what we have, which is three lawyers and a dozen research

analysts to help service well over a hundred cases at a time.

      7.     The discovery infractions complained of in this case are merely symptoms of a

high volume practice, rather than the result of same nefarious scheme or fraudulent intent, as

Vox would have this Court believe.

**<u>My Representation of Bill Wisser</u>**

      8.     I am lead counsel in this action and the sole attorney of record to appear on behalf

of the plaintiff, Bill Wisser ("Plaintiff" or "Wisser").

      9.     I have been continuously representing Mr. Wisser since May 2017. As part of the

legal services LLF provides, we register his photographs with the U.S. Copyright Office, search

for copyright infringements, and prosecute his claims in federal court.

      10.    My engagement letter with Mr. Wisser states that he authorizes LLF "to take any

steps, which, in their sole discretion, are necessary or appropriate to protect your interest in your

claims."  I signed the engagement letter on May 11, 2017.  Attached hereto as <u>Exhibit O</u> is a true

and correct copy of the signature page of the engagement letter with Mr. Liebowitz.

      11.    LLF works on contingency, which means that Mr. Wisser and I share in the

proceeds of litigation.

      12.    Since engaging my firm's services, I have personally filed eighteen (18) copyright

infringement cases on Mr. Wisser's behalf, including the present action.  *See Wisser v. 1220*

*Collins Ave., Inc.*, 1:19-cv-00349-AT (S.D.N.Y.) (pending – filed 1/13/19); *Wisser v. Art Media*

*Holdings, LLC*, 1:18-cv-08227-GHW (S.D.N.Y.) (resolved 11/26/18); *Wisser v Artistic Frame Corp.*, 1:19-cv-02508-PKC (S.D.N.Y.) (resolved 9/13/19); *Wisser v. Forbes Media, LLC*, 1:17-cv-07212-LGS (S.D.N.Y.) (resolved 12/13/17); *Wisser v. Goop, Inc.*, 1:19-cv-03733-LTS (S.D.N.Y.) (resolved 5/9/19); *Wisser v. Group Nine Media, Inc.*, 1:19-cv-09045-VEC (S.D.N.Y.) (pending - filed 9/29/19); *Wisser v. The Infatuation Inc.*, 1:19-cv-07034-PKC (S.D.N.Y.) (pending – filed 7/28/19); *Wisser v. Morris Communications Company, LLC, 1:18-cv-05262-PGG* (S.D.N.Y.) (resolved); *Wisser v. Resident Publications, Inc., 1:19-cv-04061-AT* (S.D.N.Y.) (resolved 7/29/19); *Wisser v. Resy Network, Inc., 1:17-cv-07491-DLC* (S.D.N.Y.) (resolved 12/9/17); *Wisser v. Sixty Hotels, LLC*, 19-cv-3365-ER (S.D.N.Y.) (resolved 5/13/19); *Wisser v. The Infatuation, Inc.,* 18-cv-7417-LAK (S.D.N.Y.) (resolved 11/18/18); *Wisser v. Zagat, Inc.*, 17-cv-4213-ER (S.D.N.Y.) (resolved 12/8/17); *Wisser v. MusicSubmit, LLC*, 19-cv-2788 (D. Co.) (pending - filed 9/29/19); *Wisser v. Morris Communications Company, LLC, 18-cv-00150 (Ga S.D.)* (pending); *Wisser v. The Institute of Contemporary Art, Inc., 19-cv-10201 (resolved 4/5/19); Wisser v. Vox Media, Inc., 19-cv-01445*-LGS *(S.D.N.Y.) (pending).*

13.     Before this lawsuit was initiated, I filed another copyright infringement action on Mr. Wisser's behalf against Vox for re-publishing his work without authorization.  *See Wisser v. Vox*, 1:18-cv-01349-GHW.  That suit was resolved on June 12, 2018.

**Prior Suits Against Vox Media**

14.     There are several media companies in this industry which continue to violate U.S. Copyright law because it is a cost efficient business model.  Vox is one of those companies.  In the last three or so years, I have sued Vox ten times on behalf of photographers.  *See Babcock v. Vox Media, Inc.*, 18-cv-10361-ALC-BCM; *Chevrestt v. Vox Media*, Inc., 18-cv-11698-AT-GWG; *Hirsch v. Vox Media, Inc.,* 16-cv-cv-4064-AT; *Kmonicek v. Vox Media, Inc.*, 18-cv-

08062-NRB; *Masi v. Vox Media, Inc.,* 16-cv-08484-ALC-RLE; *Messerschmidit v. Vox Media, Inc.*, 18-cv-05702-AT; *Sands v. Vox Media, Inc.*, 16-cv-07195-JMF; *Stross v. Vox Media, Inc.*, 18-cv-07096-VA; *Wisser v. Vox Media, Inc.*, 18-cv-01349-GHW; *Wisser v. Vox Media, Inc.*, 19-cv-01445-LGS.  The docket sheets are attached as Exhibit A.

15.     To put this in perspective, my firm only represents an infintissemal fraction of photographs in the marketplace. And yet, we've managed to catch Vox stealing at least ten times. Given Vox's pervasive history of infringement suits, and given that this case marks the second time that Vox has infringed on MR. Wisser's rights, it only made sense to bring Vox to full and final judgment in this action.

16.     Our decision to press forward with prosecution to final judgment against Vox, a serial infringer, is consistent with LLF's mission statement.  For example, LLF has obtained judgments of liability for copyright infringement in *Sands v. CBS Interactive, Inc.,* 18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. March 13, 2019) (summary judgment); *Mango v. BuzzFeed, Inc.,* 356 F. Supp. 3d 368 (S.D.N.Y. 2019) (bench trial); *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018) (summary judgment); *Chicoineau v. Bonnier Corp.,* No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018) (summary judgment); and *Goodman v. Universal Beauty Prod. Inc.,* No. 17-CV-1716 (KBF), 2018 WL 1274855, at *1 (S.D.N.Y. Mar.9, 2018) (summary judgment).

17.     It is only right and just that Vox stand trial eventually for its repeated abuse of the nation's copyright laws.  That's why the Rule 68 offer in this case was rejected.  Acceptance of a "no admission" judgment does not serve the public interest.  Moreover, Vox's offer was not sufficient to provide any deterrent to future infringement.

**VOX's UNCLEAN HANDS**

18.     Vox's motion for sanctions is focused on hyper-technicalities that caused Vox zero prejudice or were, in the big spectrum of things, 100% harmless. Vox, and their lead counsel, Rachel Strom, are just trolling for sanctions because, as Judge Furman pointed out, my firm is a target for sanctions based on the high volume of cases we file.  Moreover, there is nothing the media companies would like more than to see LLF put out of business so they can go back to poaching intellectual property without the distraction of any law enforcement.

19.     To make matters worst, while LLF's discovery infractions, such as missing an interim deadline by three days, were a result of administrative oversight or excusable neglect, Vox and Strom worked to conceal material documents until the date of Mr. Wisser's deposition, where they ambushed him with key documents that had not even been produced prior to August 15, 2019.

20.     Along the way, Vox, Strom and Vox's corporate representative, Samantha Mason, lied about where Vox got the photograph in order to promote a sham license defense.  As demonstrated below, Vox's responses to Plaintiff's interrogatories were evasive or patently false. To further perpetrate the scheme, Vox produced documents purporting to show that Olee Fowler, the author of the infringing article, received the Photograph from Ariete restaurant as part of a routine press release.  The concept was, if Vox got the photo in the context of a press release, then Vox had the license to publish it.  Alternatively, if Vox received a photograph in the form of a press release, Vox could claim non-willfulness.

21.     But alas, it was all a sham.  We learned at Mr. Wisser's deposition, for the first time on August 15, 2019, that Vox just poached the image from Ariete's social media account without Ariete's knowledge.  That's reckless.  And the undisputed fact that Rachel Strom

intentionally withheld that document for almost two months past the Court-ordered deadline, and then just sprung it on Mr. Wisser at his deposition, shows who the real bad faith actor was in the discovery process.

22.     In contrast to Ms. Strom's bad faith concealment of material documents, Wisser withheld nothing.  I don't even recall objecting to the production of a single document.  LLF just produced documents in the ordinary course and if Ms. Strom raised an issue, such as the formatting of certain e-mails, I just went right back to Mr. Wisser and asked him to re-produce those documents in the requested format.  Point blank: unlike Vox and Strom, neither Wisser nor LLF had anything to hide.

## VOX'S FALSE AND MISLEADING RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

23.     Vox's responses to Plaintiff's interrogatories are attached hereto as <u>Exhibit B</u>.

24.     <u>Plaintiff' interrogatory No. 1</u> asks Vox to "Identify all uses of the Photograph by defendant and its affiliates, subsidiaries, and parent companies." In violation of Rule 26(g)(1)(A) & (B)(ii) and Rule 37(d)(1)(A)(ii), Vox refused to provide a substantive response to this interrogatory.

25.     <u>Plaintiff's interrogatory No. 2</u> asks Vox to "Identify any Website and URLs from where defendant obtained the Photograph."  In violation of Rule 26(g)(1)(A) & (B)(ii) and Rule 37(d)(1)(A)(ii), Vox refused to provide a substantive response to this interrogatory. Had Vox complied with its discovery obligations, it would have disclosed that it retrieved the photograph from Ariete's facebook page.

26.     <u>Plaintiff's interrogatory No. 3</u> asks Vox to "Identify all persons from whom defendant obtained the Photograph."  In violation of Rule 26(g), Vox identified Olee Fowler. In violation of Rule 26(g)(1)(A) & (B)(ii) and Rule 37(d)(1)(A)(ii), Vox's response is patently false

and Samantha Mason should be charged with the penalty of perjury for verifying a false response.  Fowler is an employee of Vox.  Thus, there is legal distinction between Vox and Fowler as corporations can only act through human beings who carry out the corporate function.  Defendant did not obtain the Photograph from Olee Fowler.  Fowler is the one who expropriated the photograph.  The Photograph was obtained from Ariete's facebook page.

27.    Plaintiff's Interrogatory No. 11 asks Vox to "Identify all persons with knowledge or information about defendant's attempts to secure the rights to the Photograph prior to their publication on the Website." Defendant responded with Olee Fowler.  However, in violation of Rule 26(g)(1)(A) & (B)(ii) and Rule 37(d)(1)(A)(ii) this response is patently false.  Fowler made no attempt to license the Photograph.  She just ripped it off from Ariete's facebook page without asking.

**VOX'S FAILURE TO PRODUCE KEY DOCUMENTS IN RESPONSE TO PLAINTIFF'S DOCUMENT REQUESTS**

28.    Vox's responses to Plaintiff's first set of document requests are attached hereto as Exhibit C.

29.    Plaintiff's document request No. 1 asks Vox to produce "All records, documents and communications concerning defendant's discovery of the Photograph, including all communications to, from and between person or persons who first came across the Photograph." In response, Vox stated it would produce documents responsive to this request.  However, Vox's counsel, Rachel Strom, withheld production of the screenshot of Ariete's facebook page until the date of Mr. Wisser's deposition, August 15, 2019, where she sought to ambush him with questions regarding the document.

30.    Plaintiff document request No. 8 asks Vox to produce "All records, documents and communications concerning defendant's efforts to identify the name of copyright holder,

copyright owner and/or copyright author of the Photograph." Vox stated it would produce such documents, but it never did.

31.    Plaintiff's document request No. 9 asks Vox to produce: "All records, documents and communications concerning defendant's efforts to identify the name the photographer of the Photograph." Vox stated it would produce such documents, but it never did.

32.    Plaintiff's document request No. 10 asks Vox to produce "All records, documents and communications concerning defendant's efforts to contact the photographer of the Photograph prior to defendant's publication of the Photograph." Vox stated it would produce such documents, but it never did.

33.    Plaintiff's Document Request No. 11 asks Vox to produce: "All records, documents and communications concerning defendant's efforts to license the Photograph." Vox stated it would produce such documents, but it never did.

34.    Plaintiff's Document Request No. 35 asks Vox to produce: "All records, documents, statements, invoices and contracts which show that defendant has licensed Photograph for use on the Website." Vox stated it would produce such documents, but it never did.

35.    Plaintiff's Document Request No. 36: All records, documents, statements, invoices and contracts which show that defendant has licensed Photograph for use on any website owned and operated by defendant." Vox stated it would produce such documents, but it never did.

**TIMELINE OF PARTIES' DOCUMENT PRODUCTION**

**A.    Vox's Production**

36.     On June 11, 2019, Vox produced its first set of documents, bate-stamped VM_00001-31. Attached as Exhibit D are the non-confidential documents, VM_025-31.  Vox did not include a screenshot of Ariete's facebook page or otherwise indicate from where Vox obtained the Photograph.

37.     On June 27, 2019, Vox produced its second set of documents with large and mysterious gaps in the bate-stamps, bate-stamped VOX_000032-49, 52, 56, 59, 61, 64, 67, 70, 72], attached as Exhibit E.  Vox did not include a screenshot of Ariete's facebook page or otherwise indicate from where Vox obtained the Photograph.

38.     On August 19, 2019, Vox produced its third production of documents, attached as Exhibit F.

39.     On August 20, 2019, almost two months after the Court-ordered deadline, Vox finally produced the incriminating screenshot of Ariete's facebook page, and only after Vox was accused of improperly withholding it, attached as Exhibit G.

**B.     Wisser's Production**

40.     On June 26, 2019, Wisser produced his first set of documents, bate-stamped BW_001-51, attached as Exhibit H.

41.     On June 27, 2019, Wisser produced his second set of documents, bate-stamped BW_052-62, attached as Exhibit I.

42.     On July 17, 2019, Wisser produced his third set of documents, not bate stamped, attached as Exhibit J.

43.     On July 18, 2019, Wisser produced his fourth production of documents, not bate-stamped, attached as Exhibit K.

44.     On July 19, 2019, Wisser produced his fifth production of documents, not bate-stamped, attached as <u>Exhibit L</u>

45.     On July 21, 2019, after Vox complained that the e-mail productions were not properly formatted, Wisser produced his sixth production of documents, not bate-stamped, attached as <u>Exhibit M</u>

46.     On August 14, 2019, Wisser produced his seventh production of documents, not bate-stamped, attached as <u>Exhibit N.</u>

**<u>WISSER'S INITIAL DISCOVERY RESPONSES</u>**

47.     As lead counsel in this action, I take accountability for whatever deficiencies there were in my client's initial responses to Vox's discovery responses.  I am the signatory on the documents and I did certify that they were complete and correct at the time they were served on June 7, 2019.  While they were not entirely complete, they were substantially complete. Moreover, none of the initial answers to Mr. Wisser's interrogatories were incorrect.  There were no false or misleading statements of any kind in that document (unlike Vox's interrogatory responses, as demonstrated above).

48.     Vox's interrogatory No. 1 seeks information that is wholly irrelevant to the claim, and we should have simply objected to even answering that interrogatory.  The fact that other infringers may exist is of no legal consequence.

49.     The other challenged responses were substantially complete.  Moreover, my understanding is that Rule 26(e) allows us to supplement the responses as discovery progresses and it is ordinary custom and practice for parties to supplement during the discovery period.

50.      It is LLF's custom and practice to procure as much information and documents as we can at the outset of any infringement suit, as we are able to anticipate the documents

needed, such as licensing fee history and copyright registration materials.  That was done in this case.

51.     It is not LLF's ordinary custom and practice to serve Rule 33(b)(5) verifications unless they are requested.  I can attest, having litigated over 1000 cases in this Circuit, that 98% of practitioners in this District, if not more, do not initially comply with Rule 33(b)(5) unless opposing counsel specifically makes a request for a verification.  This is particularly true in S.D.N.Y., where interrogatories are limited in scope and serve primarily as a discovery device.

52.     As this motion demonstrates, Rule 33(b)(5) presents a trap.  We have now learned that even Vox's corporate representative may have to answer to claims of misconduct respecting her verification for providing patently false and evasive answers to Wisser's interrogatories.

53.     In LLF's ordinary course of practice, in matters where clients' signatures are required, such as settlement agreements or court-filed declarations, we obtain the client's signature digitally via *Hello-Sign*, or ask them to sign by hand, scan and e-mail the documents.

54.     I have litigated against opposing counsel in over two dozen cases.  She always makes a point of requesting verifications.   For simple purposes of efficiency, I asked one of my analysts to prepare a verification using Mr. Wisser's electronic signature, obtained from my engagement letter with Mr. Wisser.  It was my good faith understanding at the time that I had authority and power of attorney to do so, as I am charged to act in Mr. Wisser's best interests.

55.     Because I have a longstanding attorney-client relationship with Mr. Wisser, and we have built a mutual trust and respect, I did not believe at the time that I was doing anything wrong.  Nor did I affix the signature with intent to defraud or deceive.  The verification was never filed with the Court, nor have I ever filed a Rule 33(b)(5) verification with the Court.

56.     Ultimately, I regret what has transpired as a result of this incident.  I recognize that this was not best practice and I can ensure the Court that it will not be repeated.  The charges of "forgery" and "fraud" against me and my firm are inflammatory and calculated to scandal-monger LLF and derail our efforts to enforce the rights of individual content creators.  The Court should reject these scandalous accusations given the surrounding circumstances, the nature of my relationship with the client, and the fact that no prejudice was sustained.

57.     I have also vowed to take corrective measures and feel that monetary sanctions are entirely unwarranted. I thank the Court for its consideration.

                                                                Respectfully Submitted,

Dated: October 24, 2019
New York, New York


                                                                **/s/richardliebowitz/**
                                                                RICHARD LIEBOWITZ