# Exhibit C

Page 1

1           UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF NEW YORK
2
              CASE NO. 1:19-cv-1445-LGS
3
4   BILL WISSER,
5        Plaintiff,
6   vs.
7   VOX MEDIA,
8        Defendant.
    _____/
9
10                      One Biscayne Tower
                        2 South Biscayne Boulevard
11                      Suite 2250
                        Miami, Florida
12                      Wednesday, August 21, 2019
                        11:48 a.m. to 12:40 p.m.
13
14
15
16              DEPOSITION OF OLEE FOWLER
17
18
19
20       Taken on behalf of the Plaintiff before Carol Hill
21   Weng, FPR, RMR, CRR, CMRS, CPE, CRI, a Notary Public in
22   and for the State of Florida at Large, pursuant to
23   Plaintiff's Notice of Taking Deposition in the above
24   cause.
25

```
 1   APPEARANCES:
 2   On behalf of Plaintiff:
     JAMES FREEMAN, ESQ.   (via telephone)
 3   Liebowitz Law Firm, PLLC
     11 Sunrise Plaza, Suite 305
 4   Valley Stream, New York,  11580
     JF@LiebowitzLawFirm.com
 5
     On behalf of Defendant:
 6   RACHEL F. STROM, ESQ.
     Davis Wright Tremaine LLP
 7   1251 Avenue of the Americas
     21st Floor
 8   New York, New York  10020
     rachelstrom@dwt.com
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 15

```
 1        A.      Yes.
 2        Q.      Do you believe that you saw the
 3   article before preparation for today's
 4   deposition?
 5        A.      I don't remember.
 6        Q.      Let's mark as Exhibit F the number --
 7   I'm sorry, the document Bates stamped number
 8   Vox32 through Vox48.  It's an April 16, 2016
 9   e-mail.
10               (E-mail, 4/16/2016 was marked as
11   Exhibit F for identification.)
12        A.      It's in front of me.
13        Q.      And this is an e-mail from JennyLee
14   Molina to you dated April 16, 2016?
15        A.      Yes.
16        Q.      And you recognize this document?
17        A.      Yes.
18        Q.      What is this document or what is she
19   asking here?
20        A.      She is sending me information on the
21   brunch at Ariete and wanting to see if I would
22   like to come try it.
23        Q.      Now, if you flip through the following
24   pages, do you see there that there is
25   photographs of cuisine?
```

Page 16

1    A.    Yes.
2    Q.    Is it your understanding that these
3 photographs are of cuisine that's offered at the
4 Ariete restaurant?
5    A.    Yes.
6    Q.    Do you recall whether you ever
7 published any of these images?
8    A.    I don't remember.
9    Q.    Was it your understanding that you had
10 had the authority to publish one of these images
11 because she sent them to you?
12    A.    Yes, that would be my understanding.
13    Q.    That would be your understanding.
14          Typically, if a restaurant owner sends
15 you a press release which contains photographs,
16 is it your understanding that you, working on
17 behalf of Vox, have permission to post those
18 photographs to the Eater website?
19    A.    That is my general understanding.
20    Q.    Do you recall whether you attended
21 this brunch?
22    A.    I don't remember.
23    Q.    Let's mark next Exhibit G.
24          MR. FREEMAN:  Rachel, this is the
25    Facebook post.  It's not Bates stamped but

Page 19

```
 1            So you're the author of this article,
 2   correct?
 3        A.   Yes.
 4        Q.   And you're the author of the text of
 5   the article, correct?
 6        A.   Yes.
 7        Q.   And you'll see here on the document
 8   marked BW_024 there's a photograph of roasted
 9   oysters.
10            Do you see that?
11        A.   Yes.
12        Q.   Were you the individual responsible
13   for obtaining this photograph?
14        A.   I don't remember.
15        Q.   Would you have -- would there be
16   anyone else who contributed to this article,
17   besides you?
18        A.   Possibly.  I have other contributors
19   for the site.
20        Q.   So you're saying that it's possible
21   that you drafted the text and then someone else
22   at Vox inserted the photographs?
23        A.   I'm saying there's a possibility.  I'm
24   not saying that's what happened.
25        Q.   Do you have any specific recollection
```

Page 22

1      identification of individual's knowledge of
2      this article.
3              MS. STROM:  I'll just state for the
4      record that she said it's a possibility that
5      someone else did it, not that that's what
6      happened.  And so I'll object to the
7      insinuation that there's a gap, but yes, we
8      can follow up after.
9              MR. FREEMAN:  Okay.
10     Q.     So with this particular photograph
11  here on the page marked BW_024, the photograph
12  of the oysters.
13          Do you see that?
14     A.     Yes.
15     Q.     You're saying that you have no
16  recollection of where this photograph came from?
17     A.     I have no recollection of where the
18  photo came from.
19     Q.     And -- but you're also saying it's
20  possible that you did publish this photograph?
21  You just don't remember?
22     A.     I don't remember.
23     Q.     Is it typical for you to publish
24  photographs along with articles that you write
25  the text for?

Page 23

1    A.    Yes.  That is typical.
2    Q.    That's done but you're saying not
3  always?
4    A.    Not always.
5    Q.    Do you see underneath the picture of
6  the oysters it says "Ariete Facebook" -- I'm
7  sorry, "Ariete/Facebook"?
8    A.    Yes.
9    Q.    What is your understanding of that
10 credit?
11   A.    My understanding of that credit is
12 that the image came from Facebook.
13   Q.    Okay.  So let's just go back to
14 Exhibit G, that's the Facebook exhibit.
15   A.    Yes.
16   Q.    Is it your understanding, looking at
17 this, that the photograph that's published to
18 the Eater.com website was obtained from
19 Exhibit G, which is the Facebook.com website?
20   A.    I don't know because I can't click
21 that link.
22   Q.    Right.
23         But based on your experience, given
24 that the photograph published in Eater.com says
25 "Ariete/Facebook," is it your understanding that

Page 24

1  this photograph was obtained from Ariete's
2  Facebook page?
3       A.    Yes.
4       Q.    Okay.  And do you know whether this
5  photograph on the Eater.com website, I'm
6  thinking of the photograph with the oysters, do
7  you know whether that was distributed to you by
8  the restaurant?
9       A.    I don't remember.
10      Q.    Do you have any e-mails from
11 Ms. Molina where she sent you this particular
12 photograph of the oysters?
13      A.    I don't have a specific e-mail with
14 this image in it.
15      Q.    And did you ever speak to Ms. Molina
16 by telephone?
17      A.    Ever in my life?
18      Q.    From the period 2016 to 2017.
19      A.    Have I ever spoken -- yeah.  I've
20 spoken to her since 2016.
21      Q.    Okay.  Did you obtain permission from
22 Ms. Molina to use this photograph of the oysters
23 on Eater.com?
24      A.    I don't remember.
25      Q.    Had you obtained permission to publish

Page 25

1   this photograph to Eater.com website, would you
2   have asked for that permission via e-mail?
3        A.   Not necessarily.
4        Q.   You're saying that you -- you're
5   saying that it's plausible you would have phoned
6   Ms. Molina and asked whether or not you had
7   permission to republish this photograph?
8        A.   That's plausible, yes.
9        Q.   But you're not aware of any
10  documentation or any e-mail where Ms. Molina
11  gave you permission to republish the photograph
12  of the oyster to Eater.com?
13       A.   Not to my knowledge.
14       Q.   And is it your recollection that this
15  photograph of the oysters on the Eater.com
16  website, is it your recollection that this
17  photograph was distributed to you via a press
18  release?
19       A.   I don't remember.
20       Q.   You don't remember, okay.
21            Let's mark as Exhibit I the document
22  stamped Vox52 to -55.
23            MS. STROM:  We only have -52 to -54.
24            MR. FREEMAN:  That's fine.  -55 is
25      just a signature page.  That's fine.

1        CERTIFICATE OF OATH OF WITNESS
2
3   STATE OF FLORIDA          )
                              ) SS.
4   COUNTY OF MIAMI-DADE      )
5
6        I, Carol Hill Weng, FPR, RMR, CRR, CMRS, CRI, CPE,
7   Notary Public in and for the State of Florida at Large,
8   certify that the witness, Olee Fowler, personally
9   appeared before me on August 21, 2019, and was duly
10  sworn by me.
11       WITNESS my hand and official seal this August 30,
12  2019.
13
14
15  *[signature: Carol Hill Weng]*
        Carol Hill Weng, FPR, RMR, CRR, CMRS,
16      CRI, CPE
        Notary Public, State of Florida at Large
17
18  Notary No.: FF 958116
19  My Commission Expires:  March 4, 2020
20
21
22
23
24
25

Page 36

1        REPORTER'S DEPOSITION CERTIFICATE
2
3        I, Carol Hill Weng, FPR, RMR, CRR, CMRS, CPE, CRI,
4   certify that I was authorized to and did
5   stenographically report the deposition of Olee Fowler,
6   the witness herein on August 21, 2019; that a review of
7   the transcript was requested; that the foregoing pages
8   are a true and complete record of my stenographic notes
9   of the deposition of said witness; and that this
10  computer-assisted transcript was prepared under my
11  supervision.
12       I further certify that I am not a relative,
13  employee, attorney or counsel of any of the parties,
14  nor am I a relative or employee of any of the parties'
15  attorney or counsel connected with the action.
16       DATED this August 30, 2019.
17
18
         *Carol Hill Weng* (signature)
19       Carol Hill Weng, FPR, RMR, CRR
         CMRS, CPE, CRI
20
21
22
23
24
25