UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BILL WISSER<br><br>                              Plaintiff,<br><br>   - against -<br><br>VOX MEDIA, INC.,<br><br>                              Defendant. | Case No. 1:19-cv-01445-LGS |

# DECLARATION OF RICHARD LIEBOWITZ

I, Richard Liebowitz, hereby declare under the penalty of perjury that the following is true and correct to the best of my personal knowledge and belief:

1. I submit this declaration in opposition to the motion for sanctions filed by Defendant Vox Media, Inc. ("Vox").

**My Background**

2. I am the founder and sole member of Liebowitz Law Firm, PLLC ("LLF"), which began filing cases in January 2016. Since that time, I have filed over 1800 copyright infringement cases throughout the United States, approximately 1100 of which have been prosecuted in this Circuit. We mostly represent individuals who are the original authors and owners of their copyrighted works.

3. LLF seeks to vindicate the public interest by ensuring that the rights of individual photographers are protected against the corporate entities which seek to exploit their property

without authorization.  The end goal of copyright litigation is to ensure that a fully functioning licensing market exists for commercial use of images.

4. The number of lawsuits filed by my firm primarily shows that violation of the Copyright Act via unauthorized use of photographic materials is an epidemic. While high volume litigation is necessary to enforce the rights of content creators, it comes with its disadvantages, such as administrative failure.  The discovery infractions complained of in this case are merely symptoms of a high volume practice, rather than the result of same nefarious scheme or fraudulent intent.

**My Representation of Bill Wisser**

5. I am lead counsel in this action and the sole attorney of record to appear on behalf of the plaintiff, Bill Wisser ("Plaintiff" or "Wisser").

6. I have been continuously representing Mr. Wisser since May 2017. As part of the legal services LLF provides, we register his photographs with the U.S. Copyright Office, search for copyright infringements, and prosecute his claims in federal court.

7. My engagement letter with Mr. Wisser states that he authorizes LLF "to take any steps, which, in their sole discretion, are necessary or appropriate to protect your interest in your claims."  I signed the engagement letter on May 11, 2017.  Attached hereto as Exhibit A is a true and correct copy of the signature page of the engagement letter with Liebowitz Law Firm.

8. Since engaging my firm's services, I have personally filed eighteen (18) copyright infringement cases on Mr. Wisser's behalf, including the present action.  *See* Affidavit of Bill Wisser, dated October 24, 2019, ¶¶ 22-23.

**Prior Suits Against Vox Media**

9. There are several media companies in this industry which continue to violate U.S. Copyright law because it is a cost efficient business model. Vox is one of those companies. In the last three or so years, I have sued Vox ten times on behalf of photographers. *See Babcock v. Vox Media, Inc.*, 18-cv-10361-ALC-BCM; *Chevrestt v. Vox Media*, Inc., 18-cv-11698-AT-GWG; *Hirsch v. Vox Media, Inc.,* 16-cv-cv-4064-AT; *Kmonicek v. Vox Media, Inc.*, 18-cv-08062-NRB; *Masi v. Vox Media, Inc.,* 16-cv-08484-ALC-RLE; *Messerschmidit v. Vox Media, Inc.*, 18-cv-05702-AT; *Sands v. Vox Media, Inc.*, 16-cv-07195-JMF; *Stross v. Vox Media, Inc.*, 18-cv-07096-VA; *Wisser v. Vox Media, Inc.*, 18-cv-01349-GHW; *Wisser v. Vox Media, Inc.*, 19-cv-01445-LGS. The first page of the relevant docket sheets are attached as Exhibit B.

10. Our decision to press forward with prosecution to final judgment against Vox, a serial infringer, is consistent with LLF's mission statement. For example, LLF has obtained judgments of liability for copyright infringement in *Sands v. CBS Interactive, Inc.,* 18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. March 13, 2019) (summary judgment); *Mango v. BuzzFeed, Inc.,* 356 F. Supp. 3d 368 (S.D.N.Y. 2019) (bench trial); *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018) (summary judgment); *Chicoineau v. Bonnier Corp.,* No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018) (summary judgment); and *Goodman v. Universal Beauty Prod. Inc.,* No. 17-CV-1716 (KBF), 2018 WL 1274855, at *1 (S.D.N.Y. Mar.9, 2018) (summary judgment).

**VOX's UNCLEAN HANDS**

11. Vox's motion for sanctions is focused on hyper-technicalities that caused Vox zero prejudice or were, in the big spectrum of things, 100% harmless. Vox, and their lead counsel, Rachel Strom, are just trolling for sanctions because, as Judge Furman pointed out, my firm is a target for sanctions based on the high volume of cases we file.

12. To make matters worst, while LLF's discovery infractions, such as missing an interim deadline by three days, were a result of administrative oversight or excusable neglect, Vox and Strom worked to conceal material documents until the date of Mr. Wisser's deposition, where they ambushed him with key documents that had not produced prior to August 15, 2019.

13. Along the way, Vox, Strom and Vox's corporate representative, Samantha Mason, lied about where Vox got the photograph in order to promote a sham license defense. As demonstrated below, Vox's responses to Plaintiff's interrogatories were evasive or patently false. To further perpetrate the scheme, Vox produced documents purporting to show that Olee Fowler, the author of the infringing article, received the Photograph from Ariete restaurant as part of a routine press release. The concept was, if Vox got the photo in the context of a press release, then Vox had the license to publish it. Alternatively, if Vox received a photograph in the form of a press release, Vox could claim non-willfulness.

14. But alas, it was all a sham. We learned at Mr. Wisser's deposition, for the first time on August 15, 2019, that Vox just poached the image from Ariete's social media account without Ariete's knowledge. The undisputed fact that Rachel Strom intentionally withheld that document for almost two months past the Court-ordered deadline, and then just sprung it on Mr. Wisser at his deposition, shows who the real bad faith actor was in the discovery process.

15. In contrast to Ms. Strom's bad faith concealment of material documents, Wisser withheld nothing. I don't even recall objecting to the production of a single document. LLF just produced documents in the ordinary course and if Ms. Strom raised an issue, such as the formatting of certain e-mails, I just went right back to Mr. Wisser and asked him to re-produce those documents in the requested format. Point blank: unlike Vox and Strom, neither Wisser nor LLF had anything to hide.

**<u>VOX'S FALSE AND MISLEADING RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>**

16.  Relevant pages of Vox's written responses to Plaintiff's interrogatories are attached hereto as <u>Exhibit C</u>.

17.  <u>Plaintiff' interrogatory No. 1</u> asks Vox to "Identify all uses of the Photograph by defendant and its affiliates, subsidiaries, and parent companies." In violation of Rule 26(g)(1)(A) & (B)(ii) and Rule 37(d)(1)(A)(ii), Vox refused to provide a substantive response to this interrogatory.

18.  <u>Plaintiff's interrogatory No. 2</u> asks Vox to "Identify any Website and URLs from where defendant obtained the Photograph." In violation of Rule 26(g)(1)(A) & (B)(ii) and Rule 37(d)(1)(A)(ii), Vox refused to provide a substantive response to this interrogatory. Had Vox complied with its discovery obligations, it would have disclosed that it retrieved the photograph from Ariete's facebook page.

19.  <u>Plaintiff's interrogatory No. 3</u> asks Vox to "Identify all persons from whom defendant obtained the Photograph." In violation of Rule 26(g), Vox identified Olee Fowler. In violation of Rule 26(g)(1)(A) & (B)(ii) and Rule 37(d)(1)(A)(ii), Vox's response is patently false and Samantha Mason should be charged with the penalty of perjury for verifying a false response. Fowler is an employee of Vox. Thus, there is legal distinction between Vox and Fowler as corporations can only act through human beings who carry out the corporate function. Defendant did not obtain the Photograph from Olee Fowler. Fowler is the one who expropriated the photograph. The Photograph was obtained from Ariete's facebook page.

20.  <u>Plaintiff's Interrogatory No. 11</u> asks Vox to "Identify all persons with knowledge or information about defendant's attempts to secure the rights to the Photograph prior to their publication on the Website." Defendant responded with Olee Fowler. However, in violation of

5

Rule 26(g)(1)(A) & (B)(ii) and Rule 37(d)(1)(A)(ii) this response is patently false.  Fowler made no attempt to license the Photograph.  She just ripped it off from Ariete's facebook page without asking.

**<u>VOX'S FAILURE TO PRODUCE KEY DOCUMENTS IN RESPONSE TO PLAINTIFF'S DOCUMENT REQUESTS</u>**

21. Relevant pages of Vox's written responses to Plaintiff's first set of document requests are attached hereto as <u>Exhibit D</u>.

22. <u>Plaintiff's document request No. 1</u> asks Vox to produce "All records, documents and communications concerning defendant's discovery of the Photograph, including all communications to, from and between person or persons who first came across the Photograph." In response, Vox stated it would produce documents responsive to this request.  However, Vox's counsel, Rachel Strom, withheld production of the screenshot of Ariete's facebook page until the date of Mr. Wisser's deposition, August 15, 2019, where she sought to ambush him with questions regarding the document.

23. <u>Plaintiff document request No. 8</u> asks Vox to produce "All records, documents and communications concerning defendant's efforts to identify the name of copyright holder, copyright owner and/or copyright author of the Photograph." Vox stated it would produce such documents, but it never did.

24. <u>Plaintiff's document request No. 9</u> asks Vox to produce: "All records, documents and communications concerning defendant's efforts to identify the name the photographer of the Photograph." Vox stated it would produce such documents, but it never did.

25. <u>Plaintiff's document request No. 10</u> asks Vox to produce "All records, documents and communications concerning defendant's efforts to contact the photographer of the

Photograph prior to defendant's publication of the Photograph." Vox stated it would produce such documents, but it never did.

26. Plaintiff's Document Request No. 11 asks Vox to produce: "All records, documents and communications concerning defendant's efforts to license the Photograph." Vox stated it would produce such documents, but it never did.

27. Plaintiff's Document Request No. 35 asks Vox to produce: "All records, documents, statements, invoices and contracts which show that defendant has licensed Photograph for use on the Website." Vox stated it would produce such documents, but it never did.

28. Plaintiff's Document Request No. 36: All records, documents, statements, invoices and contracts which show that defendant has licensed Photograph for use on any website owned and operated by defendant." Vox stated it would produce such documents, but it never did.

**TIMELINE OF PARTIES' DOCUMENT PRODUCTION**

**A.     Vox's Document Production**

29. On June 11, 2019, Vox produced its first set of documents, bate-stamped VM_00001-31. Attached as Exhibit E are the non-confidential documents, VM_025-31. Vox did not include a screenshot of Ariete's facebook page or otherwise indicate from where Vox obtained the Photograph.

30. On June 27, 2019, Vox produced its second set of documents with large and mysterious gaps in the bate-stamps, bate-stamped VOX_000032-49, 52, 56, 59, 61, 64, 67, 70, 72], with relevant pages attached as Exhibit F. Vox did not include a screenshot of Ariete's facebook page or otherwise indicate from where Vox obtained the Photograph.

31. On August 19, 2019, Vox produced its third production of documents, non-bate-stamped, attached as Exhibit G.

32. On August 20, 2019, almost two months after the Court-ordered deadline, Vox finally produced the incriminating screenshot of Ariete's facebook page, and only after Vox was accused of improperly withholding it, attached as Exhibit H.

**B.    Wisser's Document Production**

33. On June 26, 2019, Wisser produced his first set of documents, bate-stamped BW_001-51, with relevant pages attached as Exhibit I.

34. On June 27, 2019, Wisser produced his second set of documents, bate-stamped BW_052-62, with relevant pages attached as Exhibit J.

35. On July 17-18, 2019, Wisser produced his third and fourth and fifth set of documents, not bate stamped, attached as Exhibit K.

36. On July 19 and 21, 2019, Wisser produced his fifth and sixth production of documents, not bate-stamped, attached as Exhibit L.

37. On August 14, 2019, Wisser produced his sixth production of documents, not bate-stamped, consisting of three pages of screenshots from Wisser's photo-editing software.

**WISSER'S INITIAL DISCOVERY RESPONSES**

38. As lead counsel in this action, I take accountability for whatever deficiencies there were in my client's initial responses to Vox's discovery responses. I am the signatory on the documents and I did certify that they were complete and correct at the time they were served on June 7, 2019. While they were not entirely complete, they were substantially complete. Moreover, none of the initial answers to Mr. Wisser's interrogatories were incorrect. There were

no false or misleading statements of any kind in that document (unlike Vox's interrogatory responses, as demonstrated above).

39. Vox's interrogatory No. 1 seeks information that is wholly irrelevant to the claim, and we should have simply objected to even answering that interrogatory. The fact that other infringers may exist is of no legal consequence.

40. The other challenged responses were substantially complete. Moreover, my understanding is that Rule 26(e) allows us to supplement the responses as discovery progresses and it is ordinary custom and practice for parties to supplement during the discovery period.

41. It is LLF's custom and practice to procure as much information and documents as we can at the outset of any infringement suit, as we are able to anticipate the documents needed, such as licensing fee history and copyright registration materials. That was done in this case.

42. It is not LLF's ordinary custom and practice to serve Rule 33(b)(5) verifications unless they are requested. I can attest, having litigated over 1000 cases in this Circuit, that 98% of practitioners in this District, if not more, do not initially comply with Rule 33(b)(5) unless opposing counsel specifically makes a request for a verification. This is particularly true in S.D.N.Y., where interrogatories are limited in scope and serve primarily as a discovery device.

43. As this motion demonstrates, Rule 33(b)(5) presents a trap. We have now learned that even Vox's corporate representative may have to answer to claims of misconduct respecting her verification for providing patently false and evasive answers to Wisser's interrogatories.

44. In LLF's ordinary course of practice, in matters where clients' signatures are required, such as settlement agreements or court-filed declarations, we obtain the client's signature digitally via *Hello-Sign*, or ask them to sign by hand, scan and e-mail the documents.

45. I have litigated against opposing counsel in over two dozen cases. She always makes a point of requesting verifications. For simple purposes of efficiency, I asked one of my analysts to prepare a verification using Mr. Wisser's electronic signature, obtained from my engagement letter with Mr. Wisser. It was my good faith understanding at the time that I had authority and power of attorney to do so, as I am charged to act in Mr. Wisser's best interests.

46. Because I have a longstanding attorney-client relationship with Mr. Wisser, and we have built a mutual trust and respect, I did not believe at the time that I was doing anything wrong. Nor did I affix the signature with intent to defraud or deceive. The verification was never filed with the Court, nor have I ever filed a Rule 33(b)(5) verification with the Court.

47. Ultimately, I regret what has transpired as a result of this incident. I recognize that this was not best practice and I can ensure the Court that it will not be repeated. The charges of "forgery" and "fraud" against me and my firm are inflammatory and calculated to scandal-monger LLF and derail our efforts to enforce the rights of individual content creators. The Court should reject these scandalous accusations given the surrounding circumstances, the nature of my relationship with the client, and the fact that no prejudice was sustained.

48. I have also vowed to take corrective measures and feel that monetary sanctions are entirely unwarranted. I thank the Court for its consideration.

Dated: November 12, 2019  
New York, New York

Respectfully Submitted,

/s/richardliebowitz/  
RICHARD LIEBOWITZ