UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BILL WISSER<br><br>　　　　　　　　　　Plaintiff,<br><br>　- against -<br><br>VOX MEDIA, INC.,<br><br>　　　　　　　　　　Defendant. | Case No. 1:19-cv-01445-LGS |

### SWORN AFFIDAVIT OF BILL WISSER

I, BILL WISSER, hereby affirm under the penalty of perjury that the following is true and correct to the best of my personal knowledge and belief:

1.　I'm the plaintiff in this action and submit this declaration in opposition to Defendant Vox Media, Inc. ("Vox")'s motion for sanctions.

**My Background**

2.　I'm a professional photographer based in Miami, Florida. I've worked as a professional photographer for over 30 years and, in my ordinary course of business, I license my work in exchange for a fee.

3.　In recent years I've specialized in creating fine photography of food, restaurants and chefs, and I'm the copyright author and owner of the photograph at issue in this case. My photo depicts a plate of roasted oysters at the Ariete restaurant in Miami, Florida (the "Photograph").

1

**My Analysis of the Publishing Industry's Copyright Infringement Culture**

4. One thing the publishing industry can do, if it's really serious about stopping copyright infringement lawsuits, is for online publishers to require all their photo suppliers to deliver, along with their photos, a written guarantee attesting that the photo supplier does indeed have the right to license those photos to the publishers.

5. This would show some due diligence by the publishers, instead of their present, widespread "Don't Ask, Don't Tell" policy — that is, don't tell where the picture came from, and don't ask — simply copy the picture off another website, or happily take it in a PR handout from someone who might, or might not, have the right to distribute the image. Don't ask, don't tell!

6. The new, written guarantee policy that I favor would raise ethical standards, and would protect photographers and publishers alike. In many instances, the written guarantee would lift liability largely off the publishers and shift it onto the guarantors' shoulders.

7. This reform would also discourage the now widespread practice of many online publishers, big and small, who've made systematic image theft a key part of their business plans.

8. Countless studies have shown that readers are far more likely to read an article. or advertisement, if it's illustrated by a photograph. Publishers therefore want as many good photos as they can get.

9. In some cases they need, on an annual basis, many hundreds, perhaps even thousands, of images to add value to their internet pages. And it appears that some publishers, who I won't name here, are willing to almost constantly publish "free" pictures which they've illegally swiped from earlier uses on the net, or which they routinely accept from eager PR or advertising people, no questions asked.

2

10. In most cases, the photographer who owns the image probably never even knows that his image has been ripped off and repurposed somewhere out there on the always expanding and seemingly almost infinite world wide web.

11. In the relatively rare instances where the photographer — or the search engines he hires — do discover an infringement and take the infringing publisher to court, the publisher may be content to pay an out-of-court settlement or a court-imposed award to the images' actual owner. And then many publishers simply walk away, considering the whole time-consuming and costly legal process to be just a normal cost of doing business.

12. This hypothetical publisher may figure that, even after paying a monetary penalty in a settlement or award, his firm comes out ahead, considering the many infringements his company may have gotten away with in the past, and never had to pay for. Not to mention the future image thefts the publisher in this scenario may now be encouraged to routinely commit.

13. That's why some people believe that the penalties that many infringers have paid in recent years have not been high enough to seriously deter this widespread Culture of Carelessness — of publishers not taking care, and literally not caring.

14. Even worse, in many instances, it appears to be a deliberate Culture of Criminality — conscious, willful criminality — using pictures they know they have no rights to. Apparently, copyright theft is still considered acceptable by some otherwise legitimate publishers. At least they've not stopped doing it. I have discovered nearly 300 instances of my pictures being pirated and that's probably only the tip of the iceberg. Other photographers report similarly widespread image theft in an almost lawless internet space.

15. The internet and digital camera revolutions have been marvelous, exciting and deeply historic developments for all the world. However, one huge negative side-effect of this

vast, constantly expanding, but largely unprotected, online treasure trove of easily available photography "free" for the taking is that a booming illegal market disrupts and distorts the legitimate, legal online market for photography — and drives down the prices photographers can get when negotiating the price tags for authorized licenses.

16. Considering that many authorized, editorial first uses are loss-leaders anyway for photographers, who are betting that the "exposure" will bring them significantly higher priced secondary sales, the downward price pressure from the illegal uses is unhealthy for the industry's entire ecosystem.

17. That's why I favor harmonious, civic-minded, common sense, win-win reforms, such as my proposed, written warranty, sourcing policy, which would go a long way to cleaning up the illegality and encouraging publishers to actually commission photographers to create new, licensable photos for them. It would also encourage publishers to pay their fair share for licensing existing, guaranteed-licensable photos for their publications, thus reducing infringements and the need for costly lawsuits.

18. This would help improve and reform the entire industry.

## My Engagement of Richard Liebowitz, Esq. and Liebowitz Law Firm, PLLC

19. Beginning in May 2017, I retained Richard Liebowitz of the Liebowitz Law Firm, PLLC ("LLF") to enforce my intellectual property rights. As part of the legal services it provides, LLF registers my photographs with the U.S. Copyright Office, searches for copyright infringements, and prosecutes claims in federal court.

20. My engagement letter with Mr. Liebowitz states that I authorize LLF "to take any steps, which, in their sole discretion, are necessary or appropriate to protect your interest in your

4

claims." I signed the engagement letter on May 11, 2017. Attached hereto as <u>Exhibit A</u> is a true and correct copy of the signature page of the engagement letter with Mr. Liebowitz.

21. LLF works on contingency, which means that my attorney and I share in the proceeds of litigation.

22. Since engaging Mr. Liebowitz's services, he has personally filed eighteen (18) copyright infringement cases on my behalf, including the present action. *See Wisser v. 1220 Collins Ave., Inc.*, 1:19-cv-00349-AT (S.D.N.Y.) (pending – filed 1/13/19); *Wisser v. Art Media Holdings, LLC*, 1:18-cv-08227-GHW (S.D.N.Y.) (resolved 11/26/18); *Wisser v Artistic Frame Corp.*, 1:19-cv-02508-PKC (S.D.N.Y.) (resolved 9/13/19); *Wisser v. Forbes Media, LLC*, 1:17-cv-07212-LGS (S.D.N.Y.) (resolved 12/13/17); *Wisser v. Goop, Inc.*, 1:19-cv-03733-LTS (S.D.N.Y.) (resolved 5/9/19); *Wisser v. Group Nine Media, Inc.*, 1:19-cv-09045-VEC (S.D.N.Y.) (pending - filed 9/29/19); *Wisser v. The Infatuation Inc.*, 1:19-cv-07034-PKC (S.D.N.Y.) (pending – filed 7/28/19); *Wisser v. Morris Communications Company, LLC*, 1:18-cv-05262-PGG (S.D.N.Y.) (resolved); *Wisser v. Resident Publications, Inc.*, 1:19-cv-04061-AT (S.D.N.Y.) (resolved 7/29/19); *Wisser v. Resy Network, Inc.*, 1:17-cv-07491-DLC (S.D.N.Y.) (resolved 12/9/17); *Wisser v. Sixty Hotels, LLC*, 19-cv-3365-ER (S.D.N.Y.) (resolved 5/13/19); *Wisser v. The Infatuation, Inc.*, 18-cv-7417-LAK (S.D.N.Y.) (resolved 11/18/18); *Wisser v. Zagat, Inc.*, 17-cv-4213-ER (S.D.N.Y.) (resolved 12/8/17); *Wisser v. MusicSubmit, LLC*, 19-cv-2788 (D. Co.) (pending - filed 9/29/19); *Wisser v. Morris Communications Company, LLC*, 18-cv-00150 (Ga S.D.) (pending); *Wisser v. The Institute of Contemporary Art, Inc.*, 19-cv-10201 (resolved 4/5/19); *Wisser v. Vox Media, Inc.*, 19-cv-01445-LGS (S.D.N.Y.) (pending). Attached as <u>Exhibit B</u> are true and correct copies of the docket sheets from the aforementioned actions.

5

23.     Before this lawsuit was initiated, Mr. Liebowitz filed another copyright infringement action on my behalf against Vox for re-publishing my work without authorization. *See Wisser v. Vox*, 1:18-cv-01349-GHW.  That suit was resolved on June 12, 2018.

24.     With respect to every filed case that Mr. Liebowitz has resolved on my behalf, he has produced favorable results.

25.     Before I learned of Mr. Liebowitz's efforts to enforce photographers' rights, I thought that bringing copyright infringers to justice was practically impossible.  But for LLF's efforts to enforce the rights of professional photographers, cases like the present would likely never get litigated given the modest values of the copyrights at issue.  As a result, media companies like Vox would be able to expropriate photographs with impunity.  It's therefore imperative that LLF continues to do the critical work it has been doing in ensuring that the rights of the artistic community remain protected.

26.     Because I have a longstanding attorney-client relationship with Mr. Liebowitz in which he has consistently produced favorable results, and because I believe in his mission to vindicate the rights of photographers who have, for far too long, had their rights trampled by the media industry, I have full faith and the utmost conviction in Mr. Liebowitz's ability and competency to represent my best interests in this litigation, as well as all others he has filed or will file on my behalf.

27.     Indeed, even after this motion for sanctions was proposed, I authorized Mr. Liebowitz to file cases on my behalf, see *Wisser v. MusicSubmit, LLC*, 19-cv-2788 (D. Co.) (filed 9/29/19), and will continue to do so.

**Discovery Responses**

28.     As I have a long-term working relationship with Mr. Liebowitz and LLF, and given that the infringement cases we file are substantially similar in terms of the categories of information that are customarily requested by the Defendant, I have developed the practice of transmitting documents and information to LLF as soon as an infringement is detected.

29.     In this particular case, when we became aware of Defendant's infringement of my photograph at www.miami.eater.com, I told LLF that only one publisher, Miami New Times, had my authorization to display the Photograph.

30.     LLF had registered the Photograph on my behalf with the U.S. Copyright Office back in July 2017, under VA 2-067-039 (the "039 Registration").  Mr. Liebowitz certified the registration himself.  Attached as Exhibit C is a true and correct copy of the 039 Registration.

31.     With respect to the written discovery responses signed by Mr. Liebowitz and served upon Vox on June 7, 2019, I did not personally review my written responses to Defendant's first set of interrogatories nor Defendant's requests for production of documents.

32.     However, I communicated with LLF about the case in the April-May 2019 time period.

**The Initial Verification – June 7, 2019**

33.     I did not personally sign the verification to my initial responses to Defendant's first set of interrogatories, which were served on June 7, 2019.  However, the electronically-generated signature matches my signature from the engagement letter I signed with Mr. Liebowitz on May 11, 2017.  See Exhibit A.

34.     I trust Mr. Liebowitz and LLF to act at all times in my best interest, and in fact I have a contract which provides that he and his firm will do so.  Thus, the fact that Mr. Liebowitz

7

or his staff affixed my electronic signature to a discovery-related document is not problematic for me, nor did I suffer any prejudice as a result.

35. In my ordinary course of practice with LLF, I sign settlement agreements using the program "*Hellosign*."

36. I understand that LLF did not send the initial verification to me via *Hellosign* because Mr. Liebowitz believed in good faith that he had my authority to sign routine discovery documents on my behalf, particularly where the information was already known to his firm. At the very least, Mr. Liebowitz had my implied authority to sign documents on my behalf by virtue of my engagement letter and our long-term attorney-client relationship which is based on mutual trust, respect and a track record of success.

37. I have never believed the accusation that LLF had engaged in "forgery" under these circumstances. I have confidence in Mr. Liebowitz and his staff, and feel they share my desire to help clean-up the copyright infringement culture so prevalent in publishing today.

**The Superseding Answers and Verification – August 15, 2019**

38. On August 15, 2019, the same date of my deposition, I learned that there were some responses to the initial discovery requests which needed to be supplemented. I therefore personally reviewed a document entitled "PLAINTIFF BILL WISSER'S SUPERSEDING ANSWERS AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES." I personally signed the Verification page via *HelloSign* and also initialed each page. Attached as Exhibit D is a true and correct copy of my superseding interrogatory responses, duly verified.

39. With the exception of identifying additional infringers, as requested by Interrogatory No. 1, there is no new information provided in my superseding interrogatory answers that was not already known to Vox prior to my deposition. Further, it is my

8

understanding that the identity of new infringers is of no consequence because Vox cannot claim a defense to infringement simply because other third parties have expropriated my Photograph without permission.

40. Well before my deposition was taken on August 15, 2019, Vox knew the following information:

(a) that I had licensed the Photograph to Miami New Times because I provided Vox with the documentary invoice in advance of my deposition;

(b) that Jason Odio had made a license inquiry, and that I quoted him a price for use of the Photograph, because I gave those e-mails to Vox well in advance of my deposition;

(c) that Ariete restaurant had knowledge concerning the subject matter of this action because Vox expropriated the Photograph from Ariete's facebook account;

(d) that Miami New Times had knowledge concerning the subject matter of this action because it was identified as the source of initial publication well in advance of my deposition; and

(e) that Mr. Liebowitz had knowledge concerning this action because his name is listed on the face of the applicable copyright registration certificate, which is a matter of public record and was identified in my complaint.

I swear under the penalty of perjury that the foregoing statements are true and correct to the best of my personal knowledge and belief.

Dated: October 24, 2019
Miami, Florida

_[signature]_
Notary Public
State of Florida
County Miami Dade

_[notary seal: JOHN TSIALAS, COMMISSION NUMBER GG 251797, EXPIRES Sept. 15, 2022, Notary Public, State of Florida]_

_[signature]_
BILL WISSER
Florida Driver's License
W260-921-47-105-0

9