UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
BILL WISSER,

                       Plaintiff,          19 Civ. 1445 (LGS)

         v.                   **OPINION AND ORDER**

VOX MEDIA, INC.

                       Defendant.
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Bill Wisser brings an action against Defendant Vox Media, Inc. alleging violations of Section 501 of the Copyright Act, 17 U.S.C. § 101 *et seq*. Defendant moves for an order compelling Plaintiff or his law firm to post a bond, and for sanctions under Federal Rules of Civil Procedure 16(f), 26(g), 37(b), 37(d), 28 U.S.C. § 1927 and the court's inherent power. For the reasons below, the motion is granted in part.

I.     BACKGROUND

Plaintiff, a professional photographer, filed the Complaint in this action on February 14, 2019, alleging that that Defendant ran an article on its website featuring one of Plaintiff's photographs (the "Photograph") without license, permission or consent. The Photograph depicts a roasted oysters dish at the Miami restaurant Ariete.

Plaintiff is represented by the Liebowitz Law Firm, PLLC ("LLF"), including Richard Liebowitz, the attorney of record on the docket, and James Freeman, a senior counsel. Mr. Liebowitz has been representing Plaintiff since 2017. The representation includes registering Plaintiff's photographs with the United States Copyright Office, searching for copyright

1

infringements and prosecuting his claims in federal court. Mr. Liebowitz has filed eighteen cases on Plaintiff's behalf.

### a. Plaintiff's Responses to Defendant's Interrogatories

On June 7, 2019, LLF served responses to Defendant's interrogatories ("Interrogatory Responses"). Mr. Liebowitz certified the Interrogatory Responses. The parties do not dispute that the responses were incomplete. The Interrogatory Responses included a document titled "Plaintiff's Verification of his Answers and Objections to Defendant's First Set of Interrogatories" (the "Verification"), which includes the following statement:

> Pursuant to Rule 33 of the Federal Rules of Civil Procedure ("Federal Rules"), Plaintiff Bill Wisser ("Wisser") being duly sworn, deposes and says that I am the plaintiff in this action, that I have read Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories, dated June 7, 2019, and know the contents thereof, and the same are true and accurate to the best of my knowledge, information and belief.

Affixed to the Verification was the following electronic signature:

*Bill Wisser*

Plaintiff represents that he "did not personally review [his] written responses to Defendant's first set of interrogatories nor Defendant's requests for production of documents." The Interrogatory Responses were prepared by Mr. Freeman who cannot "verify that any telephone conversation with [Plaintiff] took place prior to June 7, 2019," and "did not and could not certify" the Interrogatory Responses under Rule 26.[1] Mr. Liebowitz asserts that LLF followed its ordinary practice and "procure[d] as much information and documents as [they] could] at the outset of [the] infringement suit, as [LLF is] able to anticipate the documents

---

[1] Plaintiff asserts that he "communicated with LLF about the case in the April-May 2019 time period." As Plaintiff's opposition and his counsel's declarations do not assert that this communication was related to the Interrogatory Responses, the Court assumes it was not.

needed, such as licensing fee history and copyright registration materials." Mr. Liebowitz also asserts that it is not LLF's ordinary practice to serve Rule 33(b)(5) verifications unless they are requested.

Plaintiff states that he did not give explicit permission to LLF to affix his electronic signature to the Interrogatory Responses. Following LLF's ordinary practice, Plaintiff has used the program "Hellosign" to sign documents for LLF electronically when necessary. In this circumstance, however, LLF affixed Plaintiff's electronic signature directly. Mr. Liebowitz represents that, because Plaintiff's engagement letter with LLF authorizes it "to take any steps, which, in their sole discretion, are necessary or appropriate to protect [Plaintiff's] interest in [his] claims," and "[b]ecause [Mr. Liebowitz] ha[s] a longstanding attorney-client relationship with [Plaintiff] . . . [he] did not believe at the time that [he] was doing anything wrong." Plaintiff also states, "[a]t the very least, Mr. Liebowitz had [Plaintiff's] implied authority to sign documents on [his] behalf."

Plaintiff testified at the deposition on August 15, 2019 that he had not seen the Interrogatory Responses previously and that the electronic signature on the Verification was not his signature. Plaintiff also testified at his deposition that the responses to several Interrogatories were incomplete.

### b. Plaintiff's Responses to Defendant's Requests for Production

On April 9, 2019, the Court issued a Case Management Plan and Scheduling Order (the "Scheduling Order") pursuant to which any documents responsive to Requests for Production were to be produced by June 23, 2019.[2] On June 14, 2019, Plaintiff represented in a letter to the

---

[2] Per the scheduling order, the deadlines for service of requests for production, and the production of the requested documents, could be extended by the written consent of all parties

Court that he intended to produce documents by June 19, 2019. Plaintiff produced documents on June 26, 2019 and July 17, 18 and 19, 2019. The June 26, 2019 production consisted almost entirely of publicly-available documents.[3] During his deposition, Plaintiff testified that he was not asked to search for documents by his attorneys until mid-July 2019. Plaintiff also testified that, until two days prior to his deposition when he was asked to provide additional documents by his counsel, he had not understood that certain electronic files were considered documents for the purposes of production in the lawsuit.

### c. The Instant Motion

On August 14, 2019, Defendant filed a letter motion for a conference to move for an order compelling Plaintiff and/or his law firm to post a bond in order to proceed with the current action. On August 15, 2019, the day of Plaintiff's deposition, LLF served on Defendant superseding answers and objections to Defendant's interrogatories (the "Superseding Interrogatory Responses") with corrected responses. The Superseding Interrogatory Responses included a verification page with Plaintiff's wet signature. On August 21, 2019, Defendant filed a letter motion seeking to move for sanctions. Following a hearing on September 19, 2019, Defendant filed the instant motion.

## II. DISCUSSION

Richard Liebowitz, Plaintiff's counsel, has been described as a "copyright troll" who is

> more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of

---

without application to the Court, provided fact discovery was completed by August 9, 2019. There is no indication that the parties agreed to extend this deadline here.

[3] The production included a copy of the Photograph, a printout of the copyright registrations for various of Plaintiff's copyrighted photographs, certain non-Vox articles featuring the Photograph, Vox Media's Wikipedia page, two articles about Vox Media's advertising revenue, and an invoice from Plaintiff regarding photographs unrelated to the lawsuit.

> defendants seeking quick settlements priced just low enough that it is less
> expensive for the defendant to pay the troll rather than defend the claim.

*Sands v. Bauer Media Grp. USA, LLC*, No. 17 Civ. 9215, 2019 WL 4464672, at *1 (S.D.N.Y. Sept. 18, 2019); *accord McDermott v. Monday Monday, LLC*, No. 17 Civ. 9230, 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018) ("Plaintiff's counsel, Richard Liebowitz, is a known copyright 'troll,' filing over 500 cases in this district alone in the past twenty-four months."). According to representations made by Plaintiff's counsel in connection to this motion, Mr. Liebowitz has, or has had, over 1000 clients, and has filed over 650 cases this year. "[A]ccording to the Court's records, Mr. Liebowitz, who was admitted to practice in this Court in October 2015, filed 1,110 lawsuits in this Court from the beginning of 2016 through September 16, 2019. That is an average of more than one new case on every day the Court has been open for business." *Sands*, 2019 WL 4464672, at *1. Courts in this District have noted that "[t]here may well be justification for the implication [that a significant portion of the 1,110 cases . . . have been strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement." *Id.* (alteration in original). "In his relatively short career litigating in this District, Richard Liebowitz has earned the dubious distinction of being a regular target of sanctions-related motions and orders. Indeed, it is no exaggeration to say that there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz alone." *Rice v. NBCUniversal Media, LLC*, No. 19 Civ. 447, 2019 WL 3000808, at *1 (S.D.N.Y. July 10, 2019) (citing cases), *report and recommendation adopted*, No. 19 Civ. 447, 2019 WL 3752491 (S.D.N.Y. Aug. 8, 2019).

The most important facts relevant to this motion are undisputed: LLF served on Defendant incomplete Interrogatory Responses. LLF did not consult with Plaintiff before

5

certifying and serving the Interrogatory Responses, and Plaintiff had never seen them before his deposition on August 15, 2019. The Interrogatory Responses omit information that Plaintiff and LLF possessed at the time they were served. Attached to the Interrogatory Responses was a Verification to which Plaintiff's signature was affixed without his knowledge. Mr. Liebowitz certified the Interrogatory Responses. LLF served Superseding Interrogatory Responses after Plaintiff's deposition. Finally, LLF did not ask Plaintiff to search for documents responsive to Defendant's request for production until after the deadline for production in this Court's Scheduling Order had passed.

### a. Federal Rule of Civil Procedure Rule 26(g)

Defendant moves for sanctions under Rule 26(g). Although Mr. Liebowitz's certification violated Rule 26(g), sanctions are not available under that rule because Defendant was not prejudiced.

Under Federal Rule of Civil Procedure 26(g), an attorney who signs a discovery response certifies that, "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . it is complete and correct as of the time it is made." FED. R. CIV. P. 26(g)(1)(A). Mr. Liebowitz's certification violates this rule because the responses were drafted and finalized without input from the client, and without including information known to LLF at the time. However, "courts have interpreted Rule 26(g)(3) as incorporating a requirement that there be harm resulting from the alleged violation of the Rule." *Markey v. Lapolla Indus., Inc.*, No. 12 Civ. 4622, 2015 WL 5027522, at *18 (E.D.N.Y. Aug. 25, 2015), *report and recommendation adopted*, No. 12 Civ. 4622, 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016) (citing cases); *accord Borsanyi v. Huggins*, No. 17 Civ. 7266, 2019 WL 4911188, at *6 (E.D.N.Y. Sept. 30, 2019). "Harmlessness means an absence of prejudice to the defendant." *Markey*, 2015 WL

5027522, at *18.  Here, with the exception of irrelevant information about the identity of a handful of third parties who Plaintiff alleges have also infringed his copyright of the Photograph, the information missing from the Interrogatory Responses was available to Defendant through documents produced prior to Plaintiff's deposition.  *See* Dkt. No. 37-6 at 4/7: information included in response to interrogatory no. 2 was produced on July 17 per Dkt. No. 36 at 8/21; information included in response to interrogatory no. 3 was produced on July 18-19 per Dkt. No. 36 at 8-9/21 and Dkt. 56 No. at 9/9, information included in response to interrogatory no. 5 was in the Complaint and was produced on July 17 per Dkt. No. 36 at 8 n.1/21.  Accordingly, Defendant was not prejudiced, and sanctions are inappropriate under Rule 26(g).  *See* Steven S. Gensler et al., General Provisions Governing Discovery, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 26 (February 2020) ("A party who omitted information available to it at the time of the initial disclosures cannot 'cure' that omission merely by including it in a supplemental disclosure. . . That being said, the fact that the information was made available later via the supplemental disclosure might help show that the earlier omission was harmless.").

### b.  Federal Rules of Civil Procedure Rule 37 and Rule 16(f)

Defendant moves for sanctions under Rules 37(b) and (d), and Rule 16(f).  Sanctions are not available under Rule 37(d) because Plaintiff's service of incomplete responses does not constitute a failure to respond under the Rule.  Plaintiff's violation of this Court's Scheduling Order, under the totality of the circumstances, warrants sanctions under Rules 16 and 37(b).

#### i.  **Legal Standard**

Federal Rule of Civil Procedure 16 provides that, "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney" "fails to obey a scheduling or other pretrial order."  FED. R. CIV. P. 16(f)(1)(C).

"Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 16(f)(2).

Rule 37(b) of the Federal Rules of Civil Procedure provides that sanctions may be imposed against a party who fails to comply with discovery orders. Fed. R. Civ. P. 37(b)(2)(A). Rule 37(d) provides that sanctions may be imposed against a party who "fails, after being properly served with interrogatories under Rule 33 . . . to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). Prejudice to the opposing party is not required. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148–49 (2d Cir. 2010) ("'[W]e, along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions . . . Although *one* purpose of Rule 37 sanctions may in some cases be to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations, Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants. . . ." (citations omitted)).

    ii. **Analysis**

LLF did not begin producing documents until after the deadline for production under the Scheduling Order, nor did LLF ask Plaintiff to begin searching for documents responsive to Defendant's requests for production until weeks after that deadline had passed. This is clear evidence that LLF disregarded a clear and unambiguous scheduling order, conduct that warrants sanctions under the totality of the circumstances present in this case. *See Rice, LLC*, 2019 WL 3000808, at *3–4 (imposing sanctions against Mr. Liebowitz for failure to comply with court

orders and noting his pattern of non-compliance "for failing to comply with court orders and for failing to produce materials during discovery").

Plaintiff argues that Defendant's motion should be denied under the doctrine of unclean hands, *see PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) ("The Supreme Court . . . has stated that '[t]he equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage.'"), but Plaintiff does not present evidence that this doctrine should apply against Defendant here. First, Plaintiff argues that Defendant improperly withheld and concealed a screenshot of the Ariete restaurant's Facebook account[4] from its production until Plaintiff's deposition. This is unpersuasive; there is no evidence that Defendant attempted to conceal this publicly-available document, nor that Defendant possessed the screenshot before creating it for Plaintiff's deposition. Plaintiff's own Complaint attaches a screenshot of the disputed use of the Photograph that includes the words "Ariete/Facebook" beneath the Photograph, and Defendant produced an email referencing the availability of the Photograph on the Ariete Facebook page, and including the link. Similarly, Plaintiff's second argument -- that Defendant's interrogatories are false or evasive because they should have disclosed that Defendant retrieved the Photograph from Ariete's Facebook page -- fails as evidentiarily unsupported. The evidence before the Court does not support a finding of unclean hands that would preclude sanctions.

Finally, sanctions are not warranted under Rule 37(d), because the service of incomplete responses to interrogatories is not a failure to respond altogether, and courts in this Circuit have

---

[4] The Photograph depicts oysters from the Ariete restaurant, and was posted on the Ariete restaurant Facebook page. Plaintiff argues that Defendant intentionally omitted the document from its productions because Defendant improperly acquired the Photograph through the Ariete restaurant Facebook page.

9

held that only a complete failure to respond is sufficient for sanctions under Rule 37(d). *See, e.g., Doe v. Mastoloni*, 307 F.R.D. 305, 308 (D. Conn. 2015) (declining to impose sanctions under Rule 37(d) where the party had served responses to discovery requests because "[t]he misconduct at which subdivision (d) is directed consists of a party's *complete failure to respond,* by way of appearance, objection, answer, or motion for protective order, to a discovery request."); *see also* Steven S. Gensler et al., General Provisions Governing Discovery, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 37 (February 2020) ("The prevailing view is that Rule 37(d) is limited to instances of total non-compliance in discovery.").

### c. Sanctions under § 1927 and the Court's Inherent Power

Defendant moves for sanctions under § 1927 and the Court's inherent powers. Defendant's arguments are persuasive; sanctions are appropriate.

#### i. Legal Standard

Under § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. To impose sanctions under § 1927, "the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71, 79 (2d Cir. 2000); *accord Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016) (Sanctions under § 1927 are proper only when the attorney's actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."). "Bad faith is the touchstone of an award under this statute." *Revson,* 221 F.3d at 79; *accord Virginia Props., LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 113 (2d Cir. 2017). "Unlike [other] sanctions which focus

on particular papers, the inquiry under § 1927 is on a course of conduct." *Estate of Shaw v. Marcus*, No. 14 Civ. 3849, 2017 WL 825317, at *5 (S.D.N.Y. Mar. 1, 2017).

A district court also possesses inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (internal quotation marks omitted). Before doing so, a court must make a finding of bad faith similar to that required under § 1927. *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) ("The showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is similar to that necessary to invoke the court's inherent power."). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Federal Rules of Civil Procedure or a specific statute], the court ordinarily should rely on the Rules rather than the inherent power." *Id.* at 50. But, "[e]ven if the Federal Rules or a statute provides an adequate basis for imposing sanctions, a court still may resort to its inherent power as the source of the sanctions . . . ." *Mathias v. Jacobs*, 167 F.Supp.2d 606, 623 (S.D.N.Y. 2001); *accord Otto v. Hearst Commc'ns, Inc.*, No. 17 Civ. 4712, 2019 WL 1034116, at *7 n.3 (S.D.N.Y. Feb. 21, 2019).

ii. **Analysis**

Mr. Liebowitz's decision to affix Plaintiff's electronic signature to the Verification of the Interrogatory Responses, without consulting Plaintiff regarding either the contents of the Interrogatory Responses or the use of Plaintiff's signature on the Verification, was undisputedly a violation of Federal Rule of Civil Procedure 33(b). That rule requires an interrogatory to "be answered . . . by the party to whom they are directed," Fed. R. Civ. P. 33(b)(1)(a), and "must, to

the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Clear evidence shows that Mr. Liebowitz's and his firm's actions to the contrary were "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Zurich Am. Ins. Co.*, 811 F.3d at 591; *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012).

Plaintiff's Verification was entirely misleading; although the Verification indicated otherwise, Plaintiff had not in fact "read Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories, dated June 7, 2019" and did not, through the signature, verify that he "kn[e]w the contents thereof, and [that] the same are true and accurate to the best of [his] knowledge, information and belief." Mr. Liebowitz knew the Verification was misleading when it was created, and did not attempt to rectify the error by having Plaintiff review the Interrogatory Responses retroactively. Instead, the fact that Plaintiff had not answered, reviewed or verified the Interrogatory Responses was revealed to both Defendant and Plaintiff himself through Defendant's inquiries at Plaintiff's deposition. Because the creation of the Verification is completely without merit, bad faith "may be inferred." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000); *accord Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019) (observing, in awarding sanctions pursuant to § 1927 and the court's inherent power against Mr. Liebowitz and his law firm, that "bad faith can be inferred if the action is completely without merit. . . . Such is the case here."). That, in combination with (1) the admission that it is LLF's practice to not serve required Rule 33(b)(5) verifications at all unless they are requested, (2) LLF's failure even to ask its client for documents responsive to Defendant's requests for production until after the deadline for production had passed, and (3) Mr. Liebowitz's history of similar discovery misconduct in this District, provide clear evidence

12

of a course of conduct taken in bad faith pursuant to which sanctions under § 1927 and the Court's inherent powers are appropriate.

Plaintiff cites several cases in support of his argument that sanctions cannot be sustained when an attorney's action was nothing more than the result of poor legal judgment. But here, Mr. Liebowitz's actions cannot be explained as poor legal judgment because there was no basis to believe that this conduct had a colorable basis. *Cf. In re Bradley*, 495 B.R. 747, 793 (Bankr. S.D. Tex. 2013) ("If instructing one's legal assistant . . . to forge clients' signatures on the Schedules and the Statements of Financial Affairs that the attorney knows to be inaccurate—and then to file them—does not constitute bad faith, then nothing does." (emphasis removed)).

Plaintiff's opposition does not assert that his signature was affixed to the Verification in error. Rather, Mr. Liebowitz states in his declaration that he directed that the Verification be prepared with Plaintiff's electronic signature, obtained from the engagement letter, based on his "good faith understanding at the time that [he] had authority and power of attorney to do so, as [he] is charged to act in [Plaintiff's] best interests."[5] Plaintiff argues that LLF's conduct amounted to excusable neglect based on a number of factors, including (1) Plaintiff's relationship with his counsel, i.e. that his engagement letter with LLF grants LLF the power of attorney to act in Plaintiff's best interests and that LLF had Plaintiff's implied authority to affix his electronic signature to routine discovery-related documents; (2) LLF's practice of anticipating discovery requests based on past practice; (3) service of the Superseding Interrogatory Responses; (4) New York's General Obligations Law § 5-1507(1), which permits attorneys to sign documents on behalf of their clients; (5) the absence of prejudice to Plaintiff or

---

[5] The parties dispute whether the use of Plaintiff's electronic signature on the Verification amounts to "forgery." The Court need not address this argument, since it is irrelevant to the final holding.

Defendant; and (6) LLF's "unprecedented volume of cases on the docket which has produced administrative burdens."[6]

These factors are not credible explanations or justifications for Mr. Liebowitz's conduct. Plaintiff cites no legal authority for the proposition that an attorney may affix a client's signature to the client's sworn statement without express authorization where the attorney knew the statement was false -- regardless of whether the representation agreement granted power of attorney or the client retroactively asserts the attorney had implied authority. Even the New York regulation to which Plaintiff cites provides that an agent acting pursuant to a power of attorney must disclose that relationship when signing on behalf of the principal. *See* N.Y. Gen. Oblig. Law § 5-1507(1)(a)(1)-(3) ("[W]here the agent is acting pursuant to a power of attorney and where the hand-written signature of the agent or principal is required, the agent shall disclose the principal and agent relationship . . .")  The behavior is also not excused by LLF's practice to procure information and documents at the outset of a lawsuit based on their "well-founded anticipation of discovery requests", LLF's practice not to serve Rule 33(b)(5) verifications at all

---

[6] The full list of factors is: "(a) LLF's longstanding and successful attorney-client relationship with Mr. Wisser based on mutual trust; (b) LLF's engagement letter with Mr. Wisser which grants LLF the power of attorney to act in Mr. Wisser's best interests; (c) LLF's contingency-fee arrangement with Wisser (which guarantees that LLF will act at all times in Wisser's best interest); (d) LLF's pre-filing due diligence concerning Mr. Wisser's claim; (e) LLF's well-founded anticipation of discovery requests based on past practice and seasoned 'templates,' (f) Mr. Wisser's ratification of his initial responses to Vox's written requests by service of superseding responses pursuant to Rule 26(e); (g) Mr. Wisser's acknowledgment that Liebowitz had his implied authority to affix his electronic signature to routine discovery-related documents; (h) New York's General Obligations Law § 5-1507(1) (McKinney), which permits attorneys to sign documents on behalf of their clients; (i) the significant absence of any prejudice whatsoever to Mr. Wisser or Vox; and (j) LLF's unprecedented volume of cases on the docket which has produced administrative burdens (none of which should be regarded as bad faith in light of LLF's commitment to vindicating the public interest through prosecution of meritorious claims)."

unless they are requested, or LLF's repeated references to the sheer volume of cases that LLF is handling. As another court in this District recently observed,

> [T]his not the first time that Mr. Liebowitz has gotten into difficulty in this Court for what at best often is a slap dash approach to pursuing the enormous volume of cases of this nature that he has filed. A "mere oversight" that happens once or twice is one thing[.] A pattern of discovery and related abuse is quite another, and rings of deliberate indifference to an attorney's obligation to behave in a professional, responsible, and competent manner in each and every case he handles. And if the attorney has filed a deluge of cases, such that his workload is too great to discharge that obligation, the volume of cases must be reduced to a number that may be managed responsibly or the number of responsible and competent attorneys tasked with handling it must be increased.

*Sands*, 2019 WL 4464672, at *6 (imposing sanctions on Mr. Liebowitz for failure to disclose in discovery information relating to the licensing of plaintiff's allegedly infringed photos where plaintiff had knowledge of such information); s*ee also Polaris Images Corp. v. CBS Interactive, Inc.*, No. 19 Civ. 3670, 2019 WL 5067167, at *3 (S.D.N.Y. Oct. 9, 2019) ("[G]iven the frequency with which Mr. Liebowitz commits 'administrative errors,' the undersigned is unconvinced that they are indeed good faith oversights."); *Rice, LLC*, 2019 WL 3000808, at *3–4 (imposing sanctions against Mr. Liebowitz pursuant to the court's inherent authority for failure to comply with court orders and because Mr. Liebowitz's "failure to comply is not isolated but rather part of a pattern of non-compliance in this case and others . . . in which Liebowitz has been sanctioned for failing to comply with court orders and for failing to produce materials during discovery" (citing cases)); *see generally Gollomp v. Spitzer*, 568 F.3d 355, 369 (2d Cir. 2009) (stating that a court may take judicial notice of other courts' rulings in making a finding of bad faith). Finally, Plaintiff's assertion that Defendant was not prejudiced is unavailing where prejudice is not required for sanctions under § 1927 or the Court's inherent power. *Revson,* 221 F.3d at 79. Plaintiff cites to no legal authority showing otherwise.

15

Plaintiff also argues that Defendant has failed to make a clear showing that LLF's actions were motivated by any specific improper purpose. But, as another court in this District noted recently on another motion for sanctions against Mr. Liebowitz, there is no requirement "to specifically identify an improper purpose" in order to infer the bad faith required for the imposition of sanctions under 28 U.S.C. § 1927. *Craig v. UMG Recordings, Inc.*, No. 16 Civ. 5439, 2019 WL 2992043, at *2 (S.D.N.Y. July 9, 2019). "To infer bad faith, in other words, a court is required only to conclude that an attorney's actions are completely colorless, and not to identify a particular improper purpose behind those actions." *Id.* (citing *New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72–73 (2d Cir. 1996)).

Finally, Plaintiff argues that a violation of Rule 33 does not warrant sanctions because (1) some courts do not require strict compliance with Rule 33(b)(5), and (2) where a party violates Rule 33, courts instead typically order the offending party to cure the defect without the imposition of sanctions. The cases cited in support of these arguments, however, are inapposite and not binding on this Court. In any event, that some courts in the particular circumstances of another case may not require strict compliance with Rule 33, or may order a different form of relief, does not compel the same conclusion in the particular, egregious circumstances of this case.

    d. **Appropriate Sanctions**

Defendant requests that the Court order monetary sanctions in the form of costs and fees it has previously incurred in discovery thus far, an order compelling Plaintiff to appear for a second deposition to address the Superseding Interrogatory Responses, and -- in its reply -- dismissal of the case. Plaintiff counters that no sanctions are appropriate but, to the extent the Court imposes sanctions, they should not exceed the sum of either $750.00 or $100.00. Plaintiff

also requests that the Court order Defendant to pay Plaintiff's attorneys' fees in connection with this motion.

"Disciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988); *accord Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16 Civ. 1318, 2019 WL 4727537, at *28 (S.D.N.Y. Sept. 26, 2019). "[W]hether and to what extent to impose sanctions 'is committed to the sound discretion of the district court and may not be reversed absent an abuse of that discretion.'" *Borsanyi*, 2019 WL 4911188, at *6 (quoting *Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir. 1990)). "[A] District Court has broad discretion in fashioning an appropriate sanction" for discovery violations. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002). Under Rule 16, "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 16(f)(2). A court may also impose monetary or other sanctions under its inherent power. *See, e.g., Steeger v. JMS Cleaning Servs., LLC*, No. 17 Civ. 8013, 2018 WL 1363497, at *3 (S.D.N.Y. Mar. 15, 2018) (imposing a $2,000 monetary sanction on Mr. Liebowitz and ordering the completion of continuing legal education coursework in ethics and professionalism under the court's inherent power).

Here, the following sanctions are appropriate: Mr. Liebowitz and his firm[7] shall pay the reasonable attorneys' fees incurred by Defendant because of LLF's failure to comply with this Court's Scheduling Order under Rule 37(b) and 16(f). Mr. Liebowitz and his firm are also sanctioned $5,000 under the Court's inherent power, which shall be paid to the Clerk of Court by April 10, 2020. Mr. Liebowitz shall further provide proof to this Court by April 17, 2020 that LLF's policy and practice has been changed to require compliance with Rule 33(b)(5). Finally, Defendant may reopen Plaintiff's deposition for a period not to exceed 90 minutes solely to address the Superseding Interrogatory Answers due to LLF's violation of Rule 33(b)(5) and, if Defendant elects to do so, LLF shall also pay Defendant's reasonable attorneys' fees and expenses for the time spent at the deposition pursuant to § 1927 and this court's inherent power. Dismissal is not warranted as there is no evidence that the Plaintiff (as distinguished from his counsel) has acted in bad faith. *See Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994) (holding that dismissal should only be used in situations where the *litigant* has acted in bad faith).

Defendant's letter motion to compel Plaintiff to post a bond is denied with leave to renew if additional evidence comes to light regarding the merits of the underlying claim or Plaintiff's financial condition. Plaintiff's request for the Court to order Defendant to pay Plaintiff's attorneys' fees in connection with this motion is denied.

---

[7] "Because Liebowitz's 'actions were indistinguishable from those of [the Liebowitz Law Firm PLLC] as a firm,' the Court [imposes sanctions] against both Liebowitz and the Liebowitz Firm PLLC, jointly and severally." *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019) (citation omitted) (quoting *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 148 (2d Cir. 2012)); *accord Rock v. Enfants Riches Deprimes, LLC*, No. 17 Civ 2618, 2020 WL 468904, at *4 (S.D.N.Y. Jan. 29, 2020).

## III. CONCLUSION

For the reasons herein, Defendant's motion for sanctions is GRANTED in part. Defendant shall inform the Court whether it intends to re-open Plaintiff's deposition by April 10, 2020 and Defendant shall file a motion for attorneys' fees by April 17, 2020. Mr. Liebowitz and LLF shall file proof of payment of $5,000 to the Clerk of Court by April 14, 2020 and file proof that LLF's policy and practice has been changed to require compliance with Rule 33(b)(5) by April 17, 2020. Plaintiff's application to strike Docket No. 60 is denied as moot. An amended Case Management Plan and Scheduling Order shall issue separately.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 22 & 35.

Dated: April 1, 2020
      New York, New York

                                      LORNA G. SCHOFIELD
                                  UNITED STATES DISTRICT JUDGE